486 So.2d 233 (1986)
Andy HODGE and Trudy Hodge, Plaintiffs-Appellees,
v.
AMERICAN FIDELITY FIRE INSURANCE COMPANY, Defendant-Appellant.
No. 85-54.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1986.
Writ Denied June 13, 1986.
*234 Nat G. Kiefer, of Kiefer, Kiefer & Schneider, New Orleans, for defendant-appellant.
Walter J. Landry, Lafayette, for intervenor-appellee.
Alfred F. Boustany, II, Lafayette, for plaintiffs-appellees.
Before GUIDRY, FORET and HOOD,[1] JJ.
GUIDRY, Judge.
This litigation stems from an automobile accident which occurred on July 20, 1976. As a result of that accident, Lionel and Jeanette Deculit, individually and as administrators of the estate of their minor daughter, Latashia Deculit, filed a suit seeking damages against Andy Hodge, Trudy Hodge and their insurer, American Fidelity Fire Insurance Company (AFFIC). The Deculits obtained a judgment in the aforementioned suit against Andy Hodge, Trudy Hodge and AFFIC in the amount of $57,500.00, however, AFFIC's liability was restricted to the limits of coverage provided for in the policy issued by it to the Hodges, i.e., the sum of $20,000.00. Thereafter, the Hodges instituted the instant suit seeking judgment against AFFIC because of its alleged arbitrary and capricious refusal to accept a settlement offer within the policy limits. Jeanette Deculit, as administrator of the estate of her minor daughter, Latashia, intervened in this suit. Judgment was rendered on August 7, 1984 in favor of the Hodges and against AFFIC for the excess judgment previously rendered against the Hodges, together with costs, legal interest from July 20, 1977, penalties and attorney's fees. The court then ordered the award to be paid into the registry of the court for satisfaction of the Deculit's judgment. Defendant appeals. Plaintiffs and intervenor did not appeal or answer AFFIC's appeal.
Appellant, by specific assignments of error, presents the following issues for our consideration:
1. Can an insurer be held to be arbitrary and capricious and liable to its insured for an excess judgment if, prior to trial, it rejects an offer to settle for policy limits plus judicial interest and costs of court?
2. If so, did defendant, under the particular circumstances of this case, act arbitrarily and capriciously?

FACTS
On July 20, 1976, an automobile driven by Lionel Deculit, in which his wife and infant daughter, Jeanette and Latashia, were passengers, ran off a four-lane highway in Rayne, Louisiana, and into a nearby utility pole. As a result of the accident, Jeanette received numerous lacerations on her face and Latashia, then 13 months old, was blinded in her right eye. On July 20, 1977, Lionel and Jeanette Deculit, individually and as administrators of the estate of Latashia, filed suit (Civil Docket No. 41,664, Parish of Acadia, 15th Judicial District Court) for damages against Andy Hodge, Trudy Hodge and XYZ Insurance Company, alleging that Trudy Hodge was negligent *235 in driving her vehicle into the Deculits' lane of traffic, thereby forcing the Deculit vehicle off of the roadway and into a utility pole, causing their resultant personal injuries. The petition was subsequently amended to name AFFIC as the Hodge's insurer. The Hodges and AFFIC answered the petition denying any negligence on the part of Trudy Hodge and, in the alternative, alleged contributory negligence on the part of Lionel Deculit. AFFIC moved for a summary judgment on April 30, 1979, alleging cancellation of its policy of insurance on the Hodges prior to the date of the accident. This motion was denied by the trial court and the case was eventually set to be tried on September 21, 1982.
As early as 1979, the attorney then representing Andy and Trudy Hodge urged AFFIC to settle the case at the policy limits of $20,000.00, to no avail. In July and August of 1982, the Deculits made several settlement offers to AFFIC for the policy limit plus interest from July 20, 1977, the date of judicial demand. AFFIC refused these offers. Again on September 20, 1982, the day before trial, the Deculits offered to settle all of their claims for $25,000.00. AFFIC rejected this offer. Finally, on September 21, 1982, the Deculits again offered to settle their claims for $20,000.00 plus legal interest from date of judicial demand. AFFIC rejected this offer and made a counter-offer of its policy limit of $20,000.00, together with court costs. The Deculits rejected this offer and the parties proceeded to trial.
By judgment dated October 14, 1982, the trial court ruled in favor of the Deculits and against Andy Hodge, Trudy Hodge and AFFIC. Jeanette Deculit was awarded $7,500.00 and Latashia was awarded the sum of $50,000.00. The trial court found that the Hodges were insured by AFFIC at the time of the accident in the amount of $10,000.00 bodily injury liability per person. The judgment also awarded the Deculits legal interest from date of judicial demand on that amount of the judgment not in excess of the insurance policy limits and legal interest on the entire amount of the judgment from date of judgment until the full amount was paid. The judgment was amended on November 24, 1982 to provide that AFFIC was liable to Latashia only up to its policy limit of $10,000.00; AFFIC's liability for legal interest from July 20, 1977 was on only $17,500.00 until paid; and, AFFIC was liable for legal interest on the entire amount of the judgment from date of judgment until the policy limits were paid by it. No appeal was taken from this judgment.
On March 24, 1983, Andy and Trudy Hodge filed the instant suit against AFFIC, alleging that due to its failure to accept the settlement offers of the Deculits, the Hodges were cast with an excess judgment of $40,000.00. The Hodges prayed for judgment in their favor in the sum of $40,000.00 on the basis that AFFIC was arbitrary, capricious and not in good faith when it failed to accept the settlement offers made by the Deculits prior to trial of the case. They also prayed for penalties, attorney's fees and costs.
The trial on the merits, held July 17, 1984, was submitted to the court based upon a stipulation of the parties, the entire record in suit No. 41,664 (The Deculits versus the Hodges and AFFIC), the entire investigative file of AFFIC pertaining to the Deculits' suit against it, and various written settlement offers. Judgment was rendered on August 7, 1984 in favor of Andy and Trudy Hodge against AFFIC in the amount of $40,000.00, together with legal interest thereon from July 20, 1977 until paid, 12% penalty on the $40,000.00 pursuant to La.R.S. 22:658 and all costs, less judicial interest previously paid by AFFIC on the $40,000.00. It was further ordered that the above award in favor of the Hodges be placed into the registry of the court for satisfaction of the judgment awarded in favor of the Deculits in suit No. 41,664. The judgment also awarded attorney's fees to the Hodges' attorney.

AFFIC'S FAILURE TO SETTLE
Appellant's assignments of error on appeal revolve around the issue of whether or *236 not AFFIC acted in bad faith or was arbitrary and/or capricious in refusing to settle the case against the Hodges for its policy limits plus legal interest on said sum from date of judicial demand. For the following reasons, we affirm.
In his written reasons for judgment dated August 7, 1984, the trial judge thoroughly and accurately set forth the law relative to the issue presented by the instant case. We therefore adopt his discussion as follows:
"The jurisprudence is clear that a liability insurer is not required to settle a claim against its insured even within the policy limits under the penalty of an absolute liability for any excess judgment which may be rendered against its insured. However, the insurer may be liable to its insured for the judgment in excess of policy limits for which the insured is cast where the insurer's failure to accept the settlement offer is not in good faith, or is arbitrary or capricious under the circumstances. See Champion v. Farm Bur. Ins. Co., 352 So2d 737 (La.App. 3rd Cir.1977)[2]; Trahan v. Central Mutual Ins. Co., 219 So2d 187 (La. App. 3rd Cir.1969)[3]; Younger v. Lumbermen's Mutual Casualty Co., 174 So2d 672 (La.App. 3rd Cir.1965)[4]; Wooten v. Central Mutual Insurance Co., 166 So2d 747 (La.App. 3rd Cir.1964. The insurer has a duty to protect its insured. In the case of Domangue v. Henry, 394 So2d 638 (La.App. 1st Cir. 1980)[5], the court stated:
`Louisiana jurisprudence establishes that a duty is placed upon the insurer to consider the interest of the insured as paramount when an offer to settle is made. The insurer has a duty to act in good faith and to deal fairly when handling and settling claims in order to protect the insured from exposure to excess liability. See Holtzclaw v. Falco, [sic] 355 So2d 1279 (La.1978); Moskau v. Insurance Company of North America, 366 So2d 1004 (La.App. 1st Cir.1978); Comment, Duty of Insurer to Settle, 30 La.L.Rev. 622 (1970).'
The court in the case of Cousins v. State Farm Mutual Automobile Insurance Company, 294 So2d 272 (La.App. 1st Cir.1974)[6], stated that in determining liability of an insurer to its insured for refusal to accept a compromise offer the following factors should be considered: (1) The probability of the insured's liability; (2) the adequacy of the insurer's investigation of the claim; (3) the extent of damages recoverable in excess of policy coverage; (4) rejection of offers in settlement after trial; (5) the extent of the insured's exposure as compared to that of the insurer; and (6) the non-disclosure of relevant factors by the insured or insurer.
The court went on to say that the question is always: `Did the insurer exercise that degree of skill, judgment, and consideration for the welfare of the insured which it, as a skilled professional defender of lawsuits having sole charge of the investigation, settlement, and trial of the suit may have been expected to utilize?' If it did, there is no problem; it is not liable. If it did not, then a court could easily describe its conduct as being negligent, or as not in accordance with the high duty of good faith which it owed to its insured."
In applying the above jurisprudential rules to the facts of the instant case, the trial judge determined as follows:
"By the date of trial, American Fidelity had completed sufficient discovery and investigation to know the extent of plaintiffs' injuries, the very strong possibility of liability and that there did exist a good *237 possibility of an excess judgment against its insured, the Hodges.
The investigative file of American Fidelity contains correspondence which is pertinent to the issue in this case.
In a letter dated August 25, 1982, from American Fidelity's attorney, Ethel H. Cohen, to Ms. Marian MacLaren, American Fidelity Fire Insurance Company, Woodbury, New York, Ms. Cohen stated the following:
`We have nothing at this time to establish that Latashia's eye condition has any cause but the accident. If Dr. Azar's findings are consistent with the history of trauma during the automobile accident, we are faced with a serious situation. A judgment on Latashia in the range of $75,000.00 to $100,000.00 would not be out of line. A judgment on Mrs. Deculit in the neighborhood of $20,000.00 to $25,000.00 is conceivable.'
A letter dated October 27, 1982, from Ms. Cohen to Ms. MacLaren, stated as follows:
`I had little Latasha [sic] examined and the blindness and its etiology were confirmed. I saw the child and her mother in person and in my letter of August 25, 1982, I advised that a judgment on Latasha [sic] in the range of $75,000.00 to $100,000.00 would not be out of line and a judgment on her mother in the neighborhood of $20,000.00 was conceivable.
Out of my fear of an excess judgment I had Ralph Kaskell of our office review the file. I reported Mr. Kaskell's thoughts to you on September 1, 1982. Mr. Kaskell was of the opinion that something in the nature of $31,000.00 to $32,000.00 should be offered to settle this case. He was aware of the $20,000.00 limits, but out of concern of an excess judgment and because of the amount of interest that would accrue he made this recommendation ...
I wrote to you on September 15, 1982, advising that the case could be settled for $25,000.00. The letter was sent Federal Express. I pointed out that the case was set for trial Tuesday, September 21 and that it would be necessary for me to be leaving town on the afternoon of the 20th.
I spoke with you on September 17 urging a settlement in the amount of $25,000.00. I pointed out that I was aware of the policy limits of $20,000.00 but I felt the company should put up an additional $5,000.00. The basis of my recommendation was the severity of the injuries, the exposure to the insured and the amount of the [sic] interest that we would be looking at on a six year old case.
We talked again on the 20th of September, one day before the trial at which time you gave me authority of $20,000.00. I again recommended $25,000.00.
The settlement figure of $20,000.00 was extended to Walter Landry, plaintiffs' attorney by telephone on the same day that you gave it to me, September 20. I re-extended the offer to him several times at the courthouse the following day, even writing it down on a sheet of legal paper and having him read it.
I might add that when the offer came from the plaintiffs' attorney for a $25,000.00 settlement, Ralph Kaskell again advised me to urge for that authority.'
Ms. Cohen was well aware that, in the event of a judgment against American Fidelity, legal interest would be substantial. In a letter dated July 27, 1982, from Ms. Cohen to Ms. MacLaren, Ms. Cohen cited the case of Doty v. Central Mutual Insurance Co., 186 So2d 328 (La.App. 3rd Cir.1966)[7], and included the following quotation from that case:
`We therefore conclude that we were correct in [sic] our original decree insofar as as [sic] Central Mutual was held liable in solido for legal interest upon the entire personal injury award of $25,000.00 (rather than just the legal *238 interest upon the $10,000.00 policy limits awarded). However, upon the amount in excess of its policy limits, Central Mutual is liable only for the legal interest from the date of judgment (October 14, 1965), although under the jurisprudence it is liable for legal interest from judicial demand insofar as its policy limits were awarded.'
Ms. Cohen then cited the case of Glazer v. La.Trailer Sales, Inc., 313 So2d 266 (La.App. 4th Cir.1975)[8], and stated,
`Under Doty, it is abundantly clear an insurer is liable for legal interest only on the amount of its applicable policy limit from the date of judicial demand until the date of signing of the judgment, although thereafter the insurer is liable for interest on the amount of judgment, including that which exceeds applicable policy limits from date of judgment until the insurer pays or tenders the full amount it owes.'
In the same letter dated July 27, 1982, Ms. Cohen also outlined and explained Louisiana jurisprudence on excess judgments and the responsibility of the insurer to settle within policy limits. Ms. Cohen cited and quoted the following cases, Domangue v. Henry, supra; Cousins v. State Farm Mutual Automobile Ins. Co., supra; and Shelton v. Commercial Union Assur. Co., 396 So2d 1379 (La.App. 2nd Cir.1981)."
The trial court thereafter addressed the issue of AFFIC's duty to settle the case for policy limits plus legal interest from date of judicial demand. The trial court held as follows:
"... The issue in this case is res nova. Our jurisprudence is clear that an insurer has a paramount duty to protect the interest of its insureds and must act in good faith. In this case, American Fidelity was well aware of the strong possibility of an excess judgment. Its investigation revealed that there was a strong possibility of liability, extensive injuries and damages incurred by the plaintiffs and advice from its own attorney to settle the case in excess of the policy limits in order to prevent an excess judgment against the insureds. Had American Fidelity accepted the plaintiffs' offer at the trial it would have met its primary and paramount duty of protecting its insureds from the exposure to an excess judgment.
Furthermore, it would not have incurred any additional expense because it could reasonably expect a final judgment in excess of the policy limits to be rendered against it and its insureds, which would include legal interest from date of judicial demand. Therefore, the failure of American Fidelity to settle by payment of its policy limits plus legal interest was arbitrary, capricious and in bad faith...."
We agree with the trial court's findings of fact and its application of the law. AFFIC contends that it was not arbitrary and capricious in rejecting the Deculits' compromise offer and proceeding to trial because the probability of the Hodges' liability was not clearly established, and it had a reasonable defense against the Deculits. Although the record is clear that AFFIC's attorney, Ethel Cohen, consistently advised the company that the trial would simply be a swearing match between Trudy Hodge and Lionel Deculit as to the cause of the accident and that Trudy Hodge could possibly be a more convincing witness than Deculit, such advice was based on an apparent incomplete investigation by AFFIC. Cohen advised AFFIC that the police report of the accident listed the sole violation of either vehicle to be that the Deculits' vehicle had defective brakes and worn or smooth tires. However, Cohen also reported that the police report contained a notation that there existed an eyewitness to the accident who stated that Trudy Hodge turned in front of Lionel Deculit, thereby running him off of the road and into a telephone pole. Despite AFFIC's awareness of the existence of such a witness, there is no evidence in the record to indicate *239 any attempt by AFFIC to contact that witness and ascertain his account of the accident. Had it done so, AFFIC would have realized the strong probability of a finding of negligence on the part of Trudy Hodge. AFFIC also failed to secure the depositions of or the attendance at trial of the three occupants in the Hodge car. Such incomplete investigation on the part of AFFIC cannot support AFFIC's contention that it believed that Trudy Hodge was not negligent in the instant case. Had a thorough investigation been conducted, Mrs. Hodge's negligence would have been apparent, thereby warranting a settlement of the case prior to trial.
Appellant argues in brief that it did not settle the case for policy limits plus legal interest from date of judicial demand because it felt that it should not be penalized for the Deculits' procrastination and delays in getting the case set for trial. The record reveals that the Deculits filed suit on July 20, 1977. Trudy Hodge was deposed on September 29, 1978. The Deculits moved to fix a trial date on February 16, 1979. AFFIC moved for a summary judgment on April 30, 1979, which motion was denied May 23, 1979. Lionel Deculit's deposition was not taken until August 20, 1982. The trial of the matter took place on September 21, 1982. Although we recognize that an inordinate amount of time transpired from the time that the original petition was filed until a trial date was set, we cannot say that the Deculits were solely responsible. The record does not indicate that defendants were ready to either settle or try the case any earlier than plaintiffs. In any event, we do not consider that, considering all of the other factors involved, the delay justified defendant's decision not to settle this matter for its policy limits plus legal interest.
Finally, appellant argues that it was not under a duty to settle for judicial interest since such is only allowed when there has been a judgment rendered. La.R.S. 13:4203.[9] As set forth by the trial judge, since there was no substantial issue of liability and it was reasonably certain that a judgment in excess of the policy limits would be rendered against the Hodges, AFFIC's failure to settle for policy limits plus legal interest was arbitrary and capricious, in light of the fact that AFFIC would have been cast for judicial interest from date of judicial demand on the policy limits once judgment was rendered against it and interest on the entire amount awarded from date of judgment until it paid the sums due by it. Had there been a real issue as to liability, AFFIC would have been justified in refusing to settle the case. But as the circumstances in the instant case indicate, AFFIC's belief that it had a chance of prevailing over the Deculits at trial was not substantiated by the evidence. Their decision to proceed to trial despite the fact that there was no substantial issue of liability placed AFFIC in no worse position than it would have been had it accepted the Deculits' settlement offer. However, it did arbitrarily and capriciously expose the Hodges, whom AFFIC owed a duty to protect from exposure to excess liability, to an excess judgment well above the amount of their insurance coverage. Although, under our statutory law, legal interest does not attach until a judgment is rendered, an insurer is or should be aware of its ultimate responsibility, in event of judgment, to pay, in addition to its policy limits, judicial interest on such policy limits from date of judicial demand. This being so, it should necessarily follow that an insurer must consider its responsibility for such payment, in addition to its policy limits, in determining whether to accept a compromise settlement offer in order to protect its insured against an excess judgment. We therefore agree with the trial court that AFFIC was arbitrary and capricious in failing to accept the Deculits' offer of settlement of the policy limits plus legal interest from date of judicial demand.
*240 For the above and foregoing reasons, the judgment of the trial court in favor of Andy and Trudy Hodge and against American Fidelity Fire Insurance Company is affirmed. American Fidelity Fire Insurance Company is cast with all costs of this appeal.
AFFIRMED.
NOTES
[1] Judge Warren Hood of the 14th Judicial District Court participated in this decision as Judge Pro Tempore of the Third Circuit Court of Appeal.
[2] Writ denied, 354 So.2d 1050 (La.1978).
[3] Writ denied, 254 La.12, 222 So.2d 66 (1969).
[4] Writ denied, 247 La.1086, 176 So.2d 145 (1965).
[5] Writ denied, 399 So.2d 602 (La.1981).
[6] Writ denied, 296 So.2d 837 (La.1974).
[7] Writ denied, 249 La.486, 187 So.2d 451 (1966).
[8] Writ not considered as untimely, 318 So.2d 47 (La.1975).
[9] La.R.S. 13:4203 provides:

"Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, "ex delicto", which may be rendered by any of the courts."