Sam PARICH, Wesley Parich and Aimee V. Parich, Plaintiffs–Appellees Cross–Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Defendant–Appellant Cross–Appellee,

and

John Judice and Audrey Judice, Intervenors–Cross–Appellees.

No. 89–4636.

United States Court of Appeals, Fifth Circuit.

Oct. 19, 1990.

Howard W. Martin and Paul D. Escott, Martin, Taulbee, Bowe, Bares & Oliver, Lafayette, La., for State Farm.

Edmond L. Guidry, III, Guidry & Guidry, Martinville, La., for Parich et al.

Carolyn Ingraham–Dietzen, Lafayette, for intervenor-Judice.

Before GARZA, GARWOOD and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this diversity case, State Farm appeals a judgment based on a finding that it negligently failed to settle an auto-accident suit

against an insured. State Farm soon realized that the victim's medical expenses would exceed the insured's $25,000 policy limits, but could not reach a settlement with the victim. The case went to trial, and the jury rendered a verdict against the insured for almost $400,000. As part of a subsequent compromise agreement, the insured agreed to pay the victim $15,000 and to assign him its right to sue State Farm for negligent failure to settle, in return for release from liability on the judgment. The victim and the insured then sued State Farm.

After a bench trial on the issue of negligent failure to settle, the district court found that State Farm had negligently failed to settle the case and awarded judgment against State Farm. In doing so, however, the district court held the post-judgment settlement between the insured and the victim had not been a valid compromise of their dispute. The insured had thus retained its right of action against State Farm. The district court entered judgment in the insured's name, but ordered it paid to the victim, who intervened in the action. For the reasons set forth below, we reverse.

I

On May 31, 1982, Wesley Parich, son of Sam and Aimee Parich, had an automobile accident involving John Judice in New Iberia, Louisiana. Judice suffered extensive injuries to his legs, hip, and head. State Farm Mutual Automobile Insurance Company had issued a liability policy covering the Parich family and the car Wesley was driving. The policy provided bodily injury liability limits of $25,000 per person.

On March 24, 1983, the Judices sued the Pariches and State Farm in state court. On April 22, they added the city of New Iberia and its insurance company as defendants. On July 8, Alex Lopresto, the attorney for State Farm, offered to pay the policy limits, $25,000, plus $10,000 from the Pariches to settle the case. Cecilia Bonin, attorney for the Judices, rejected the offer and countered with a request that State

Farm unconditionally tender $25,000. State Farm refused.

On September 6, 1984, Bonin offered to settle the case for State Farm's policy limits, costs, and interest plus $25,000 from the Pariches. State Farm counter-offered on September 12, with a proposal to settle for $24,000 (the balance of its policy limits, as $1,000 had already been advanced to the Judices for medical expenses), court costs, and $12,000 from the Pariches. Bonin rejected this counter-offer.

A year-and-a-half later, as trial was approaching, the parties exchanged new offers and counter-offers. On March 13, 1986, Bonin offered to settle with State Farm for $310,000; Lopresto refused. Meanwhile, Bonin was also discussing a settlement with the city of New Iberia. These negotiations were more successful. On the morning of March 21, Bonin and the Judices met with an attorney for the city. State Farm was not represented at this meeting. The Judices agreed to settle their claims against the city for $157,000.

Bonin then immediately telephoned Lopresto and offered to settle the case against State Farm for the balance of its policy limits ($24,000), interest, court costs and $12,000 from the Pariches. This was exactly the offer that State Farm had made in September of 1984, except that it included a request for interest on State Farm's portion of the settlement. Lopresto explained that he would need authority from a State Farm Claim Adjuster to agree to pay interest, and called Clyde Landreth, a Claims Supervisor. Landreth told him that State Farm had a company policy of not paying interest on settlements unless there was a judgment in force.

Lopresto called Bonin back and explained that State Farm would not pay interest. He then stated that because they were so close to a settlement (the interest was then roughly $8,000), he would contact the Pariches to see if they could make up the difference. Bonin indicated this was not acceptable, because the additional money had to come from State Farm, and withdrew her offer. Depending upon the testimony of Bonin, Lopresto or Landreth, this

entire round of phone calls occurred within the space of fifteen minutes to two hours. On March 24, Bonin formally withdrew the March 21 offer in a letter to Lopresto, and restated her earlier offer of $310,000. A week later, on April 1, Lopresto offered to settle the case for $24,000 from State Farm with interest, plus $15,000 from the Pariches. Bonin rejected this offer on April 7.

The case was tried April 14–16. The jury assigned ninety percent of the fault to the Pariches and State Farm, and ten percent to the city of New Iberia. State Farm paid its policy limits of $24,000, plus interest, leaving a balance due from the Pariches of $355,700 together with interest from March 24, 1983.

In early May, the Judices and the Pariches began further negotiations. Everyone realized that the Pariches could not pay the judgment. The parties considered State Farm's potential liability to the Pariches for its handling of the case. On May 7, Lynn DeRouen, attorney for the Pariches, wrote the Judices confirming a telephone conversation in which the Pariches agreed to pay the Judices $15,000, to assign any rights they might have against State Farm to the Judices, and to assist in a suit against State Farm for negligent failure to settle, in exchange for full release from liability. By copy of that letter, DeRouen informed Bonin that the Pariches were willing to assign their rights to the Judices and requested that she draft the necessary documents. On May 12, Bonin wrote DeRouen, acknowledging receipt of his letter and stating that she was preparing the paperwork. On July 17, Sam Parich paid Bonin $15,000 and obtained a receipt.

Attorneys for the Pariches and Judices apparently discussed different ways of substituting the Judices for the Pariches in a suit against State Farm, including a transfer of litigious rights and an intervention by the Judices in a suit filed by the Pariches. Pursuant to these discussions, Edmond L. Guidry, III, attorney for the Pariches in this case, sent DeRouen two documents: a petition for damages against State Farm on behalf of the Pariches and an assignment of the Pariches' rights against State Farm

to the Judices. According to Guidry's instructions, the assignment was to be executed in "authentic form" (before a notary and two witnesses) *after* State Farm filed an answer in the proposed suit. Guidry asked DeRouen to review the petition and assignment with the Pariches, to have them sign the verification on the petition, and to return the original petition for filing.

The assignment provided:

PERSONALLY CAME AND APPEARED: WESLEY PARICH, … and SAM and AMY [sic] V. PARICH, … who declared that in consideration of their release from that certain Judgment rendered against them in favor of John Glenn Judice and Audry [sic] Judice in the matter entitled "John Glenn Judice and Audry [sic] Judice v. Wesley Parich, Amy [sic] Parich, Sam Parich, State Farm Insurance and City of New Iberia," 16th Judicial District Court, Parish of Iberia, State of Louisiana, Civil Action No. 52363, said Judgment having been signed by Judge Edward A. delaHoussaye on April 22, 1986, said assignors have sold, assigned, transferred, set over and delivered and by these presents does, sell, assign, transfer, set over and deliver onto John Glenn Judice and Audry [sic] Judice, their successors and assigns, to their own proper use and benefit forever, any and all sum or sums now due or owing said assignor, and all claims, demands and cause or causes of action of whatever kind and nature which said assignor had or now has or may have against State Farm Insurance Company, arising out of State Farm Insurance Company's failure to properly defend and/or settle the claims against them in the aforementioned matter, …

It also stipulated that the Pariches would assist the Judices in any action against State Farm. It did not mention the $15,000 payment.

On January 16, 1987, the Pariches executed the assignment. DeRouen himself notarized it, although the Pariches actually signed the document out of his presence. He then returned the completed assignment and the petition to Guidry. When the

assignment was returned, no action had yet been filed against State Farm. Ten days later, on January 26, 1987, the Pariches brought this action in Louisiana state court against State Farm for negligent failure to settle. State Farm removed the case to federal court, and the Judices were permitted to intervene.

After a two-day bench trial, the court found that State Farm was negligent in failing to settle the Judices' claim against the Pariches for the policy limits, plus interest and $12,000 from the Pariches. The court further held that the post-judgment agreement between the Pariches and the Judices constituted neither a valid compromise nor a valid assignment of litigious rights. The compromise was not valid under La.Civ.Code art. 3071, both because there was no mutual consent to adjust differences and because performance of the agreement was not executed in the agreed upon manner (i.e., before a notary). The assignment of litigious rights was invalid because it had been executed before the suit against State Farm was filed. The court denied the Pariches penalties and attorney's fees under La.Rev.Stat. 22:658, finding that State Farm's actions were only negligent rather than arbitrary and capricious. It awarded the Pariches the rendered judgment ($355,700) plus interest from March 24, 1983, less their settlement contribution ($15,000), plus costs, and ordered that they pay this amount to the Judices. State Farm filed a timely notice of appeal, and the Pariches cross-appealed, challenging the reduction of their damages by $15,000 and the failure to award penalties and attorney's fees.

## II

State Farm raises two issues. First, it challenges the district court's conclusion that it was negligent in failing to settle the Pariches' claim on March 21, 1986, by refusing to include interest in the settlement. Second, it argues that even if it were negligent, the Pariches' compromise with the Judices fully released the Pariches from liability, so that the Pariches suffered only $15,000 damages from State Farm's actions

and thus could assign to the Judices rights to no greater recovery than $15,000. On cross appeal, the Pariches also raise two issues. First, they argue that State Farm's actions in rejecting the offer were arbitrary and capricious, thus entitling them to penalties and attorney's fees. Second, they contend that their judgment should have been reduced by only $12,000, rather than $15,000, as this is all that they would have had to pay had State Farm properly accepted the March 21 settlement offer.

## III

### A

State Farm attacks the district court's finding that it negligently failed to settle the Judices' suit against the Pariches in two ways. First, it argues that the district court erred in concluding that it was negligent. It contends that its repeated offers to settle the case for the policy limits were all that the law required at the time, and that its ultimate offer of interest and $15,000 from the Pariches demonstrated its due care. Second, it argues that the district court improperly failed to consider its defense that it had been "set up," through collusion between the Judices and the Pariches. State Farm contends that it was never presented with a good faith offer on which the Judices were prepared to settle.

### 1

■ This diversity case is controlled by the substantive law of Louisiana. Louisiana law holds that, although

an insurer is not required to settle a claim within policy limits under penalty of absolute liability for any excess judgment rendered against the insured … [, it] may be liable for an excess judgment against its insured where the insurer's failure to settle within policy limits is found to be *arbitrary* or *in bad faith.*

*Cousins v. State Farm Mut. Auto. Ins. Co.*, 294 So.2d 272, 275 (La.App. 1st Cir.), *cert. denied*, 296 So.2d 837 (La.1974) (emphasis supplied). *Cousins* identifies six factors by which to evaluate the reasonableness of an insurer's failure to settle.

These are: 1) the probability of the insured's liability; 2) the adequacy of the insurer's investigation of the claims; 3) the extent of damages recoverable in excess of policy coverage; 4) the extent of the insured's exposure compared to that of the insurer; 5) the rejection of offers in settlement after trial; and 6) the nondisclosure of relevant factors by the insured or insurer. *Id.* The fifth *Cousins* factor is irrelevant here, because no post-trial settlement offers are involved.

The application of these factors led the district court to conclude that State Farm's handling of the Judices' claim was, with one exception, perfectly proper. Very shortly after the Judices' initial demand, all parties realized that the Pariches would probably be held liable for most of John Judice's injuries (witnesses saw Judice approaching the intersection before Parich entered it from behind a stop sign), and that these damages would far exceed the $25,000 policy limits (State Farm's own damage estimates were $300,000 to $500,000). The first four factors suggest that State Farm should have offered to settle the case, which indeed it did. After preliminary negotiations, State Farm offered to settle the case as early as September 1984, for the balance of its policy limits plus several thousand dollars from the Pariches. State Farm's actions up to March 21, 1986, were thus reasonable.

On March 21, however, the Judices offered to settle for the balance of the policy limits, interest and $12,000 from the Pariches. This offer was the same as the State Farm offer in September 1984, except that it included a request for interest. The question is whether State Farm's rejection of this offer, because of its refusal to pay interest, was arbitrary and capricious.

Although there may have been some doubt before March 18, 1986, whether an insurer in these circumstances was obligated to accept an offer of policy limits plus interest, it became clear at that time. On March 18, the Louisiana Third Circuit Court of Appeals decided the case of *Hodge v. American Fidelity Fire Ins. Co.,* 486 So.2d 233 (La.App. 3d Cir.), *cert. denied,* 489 So.2d 917 (La.1986). In *Hodge,* the court held that where

> there was no substantial issue of liability and it was reasonably certain that a judgment in excess of the policy limits would be rendered against [the insured], [the insurer's] *failure to settle for policy limits plus legal interest was arbitrary and capricious,* in light of the fact that [the insurer] would have been cast for judicial interest ... once judgment was rendered against it.

486 So.2d at 239 (emphasis added).

Under the facts of this case, which were very similar to those in *Hodge,* the refusal to settle for the policy limits plus interest was arbitrary and capricious. Additionally, we should observe that the evidence showed that when the Judices' attorney made the March 21 offer to State Farm's attorney, he rejected the offer after only checking with a claims supervisor. He did not ask the Pariches to make up the difference, although he knew at the time that they were willing to pay at least $12,000 to settle the case. Neither did he contact the Pariches' attorney. Given the clear duty that the other *Cousins* factors imposed on State Farm to settle the case, we agree with the district court that the insurer's failure to inform the insured of this offer, and of the reason it would be rejected, was negligent.

2

State Farm also argues that the district court erred by refusing to consider its argument that it had been "set-up" by the Pariches and the Judices. It claimed that the Judices and the Pariches engaged in manipulative conduct to expand coverage beyond what the Pariches had purchased from State Farm: Cecilia Bonin, the Judices' attorney, gave Alex Lopresto, State Farm's attorney, an extremely short deadline for accepting the March 21 offer; when Lopresto ultimately acceded to the terms of that offer, less than one week later, Bonin refused to accept it. The Pariches deny that they colluded with the Judices to "set-up" State Farm, and note that the Judices had requested prejudg-

ment interest twice (on August 5, 1983 and September 6, 1984) before their offer of March 21, 1986.

The district court carefully considered the series of phone calls between Bonin, Lopresto, and State Farm on March 21. It found that Bonin's offer included three elements, two of which Lopresto was authorized to accept. The third element was interest. State Farm argues that the March 21 request for interest cannot have been in good faith, because its offer ten days later of both interest and an extra $3,000 from the Pariches was rejected.[1]

Although a few courts have recognized an insurer's defense of set-up, they have done so where unrealistic offers are presented through "carefully ambiguous demands coupled with sudden-death timetables." *Baton v. Transamerica Ins. Co.*, 584 F.2d 907, 914 (9th Cir.1978) (victim's offer to settle with two insurers for $110,000 or far lower "total amount of limits of insurance available," conveyed to only one insurer, too ambiguous to be a genuine offer). *Compare McNally v. Nationwide Ins. Co.*, 815 F.2d 254, 262 (3rd Cir.1987) (distinguishing *Baton* as a case in which plaintiffs "never intended to make an offer capable of being accepted") and *DeLaune v. Liberty Mut. Ins. Co.*, 314 So.2d 601, 603 (Fla.Dist.Ct.App.1975), *cert. denied*, 330 So.2d 16 (Fla.1976) (offer to settle less than two months after accident and ten months before trial, which was open for only ten days, "made it virtually impossible to make an intelligent acceptance"). The facts of this case do not establish a legally valid set-up defense.

First, the Judices' demands were never ambiguous. The demands were, in fact, so clear that Lopresto immediately knew which elements he was authorized to accept and which he was not. Second, the offer was genuine. The district court specifical-

ly found that "I have no difficulty finding as a fact that the [March 21] offer was legitimate, and had it been accepted it would have been binding." Third, there was evidence that Bonin, the Judices' attorney, believed at the time that $12,000 was all she could realistically expect to get from the Pariches. At the same time, she was sure a court would award her prejudgment interest. Finally, State Farm's subsequent offer of the policy limits, interest and $15,000 from the Pariches was not rejected until a week before trial. By this time, the *Hodge* decision had been a matter of public record for three weeks, and Bonin strongly suspected that State Farm's earlier refusal to settle for the policy limits plus interest was negligent. Armed with the knowledge that liability far beyond the policy limits was almost a foregone conclusion, and that the insureds were effectively judgment proof, Bonin's obligation to her clients precluded accepting State Farm's latest settlement. Given these circumstances, we cannot say that the district court erred by refusing to consider State Farm's defense of set up.

### B

Having concluded that the district court did not err in holding State Farm negligent for failure to settle, we now turn to the issue of the extent of State Farm's liability. We find that State Farm's liability depends upon the nature and validity of the compromise agreement between the Judices and the Pariches.

State Farm argues that even if it were negligent in failing to settle the Judices' claim, the post-judgment negotiations between the Pariches and the Judices resulted in a valid compromise. As a result, State Farm argues, the only right against State Farm that the Pariches could assign

---

1. We acknowledge that the circumstances under which the March 21 offer was made are suspect. On that date, the only real issue in the settlement negotiations was interest. All sides had extensively researched an insurer's duty to settle for the policy limits plus interest, and determined that there was no such duty. Although the *Hodge* decision became a matter of public record on March 18, as a practical matter none

of the parties could have learned of it until several days thereafter, unless they had some professional connection with the case. All parties disclaim any knowledge of the *Hodge* decision before March 21 and the district court found as a fact that none had prior knowledge. We cannot say that this finding is clearly erroneous.

the Judices was to recover the "excess amount" that they had to pay to the Judices under the settlement agreement. We agree with State Farm that the parties did enter into a valid and effective compromise agreement that released the Pariches from any further liability. As we set out in more detail below, State Farm's liability is that amount of excess payments that the Pariches suffered as a result of its failure to settle.

Louisiana law provides that the parties to a dispute may adjust their differences by mutual consent and enter into a compromise agreement. La.Civ.Code Ann. art. 3071 states:

> A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
>
> This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.

Generally, a transaction or compromise is a contract to settle a lawsuit and therefore must possess the essential elements of any type of contract to be valid. *Horace Mann Ins. Co. v. Casualty Reciprocal Exchange*, 383 So.2d 1040 (La.App. 1st Cir.1980). The five specific requirements of a valid compromise under art. 3071 are: (1) a writing; (2) mutual consent to adjust differences; (3) the hope of gain from the agreement; (4) consideration; and (5) performance by the parties in the agreed upon manner. The parties do not dispute the existence of consideration or hope of gain. We will discuss the remaining issues in turn.

### 1.

■ Because the compromise agreement between the Judices and Pariches was not made in open court, it must be in writing to be valid. *Jasmin v. Gafney, Inc.*, 357 So.2d 539 (La.1978); *Rhodes v. Nalencz*, 545 So.2d 638, 641 (La.App. 5th Cir.1989); and *Smith v. Leger*, 439 So.2d 1203 (La.App. 1st Cir.1983). This requirement does not mean, however, that everything intended to be compromised must be contained in one document. *Charbonnet v. Ochsner*, 236 So.2d 86 (La.App. 4th Cir. 1970), *aff'd*, 258 La. 507, 246 So.2d 844 (1971); *Bonnecaze v. Hamrick*, 221 So.2d 638 (La.App. 4th Cir.1969), *cert. denied*, 254 La. 461, 223 So.2d 870 (1969). On the contrary, multiple documents which, when read together, outline the obligations of each party and evidence each party's acquiescence in the agreement may effect a valid compromise agreement. *Felder v. Georgia Pacific Corp.*, 405 So.2d 521, 523–24 (La.1981); *Jacobson v. Harris*, 503 So.2d 540, 542 (La.App. 4th Cir.1987), *cert. denied*, 503 So.2d 1019 (La.1987).

■ In the instant case, although there was no single writing memorializing the compromise, several documents read together outline the parties' obligations and acquiescence to the agreement. These documents are two letters exchanged by the attorneys for the Pariches and the Judices and a written document purporting to assign the Pariches' rights to the Judices entitled "Assignment of Litigious Right" (hereinafter "Assignment").

The first letter, dated May 7, 1986, was written by the Pariches' original attorney, Mr. DeRouen, and a copy of it was sent to the Judices' attorney. It contained the Pariches' settlement offer to the Judices and expressly set out the terms of the compromise agreement:

> This will confirm our telephone conference of today wherein you (the Pariches) indicate you are agreeable to pay $15,000 and assign any rights you may possess against State Farm, in exchange for a full release from any further liability.

We view this letter as a written offer to compromise, a copy of which was sent to the Judices' attorney, Ms. Bonin, which was accepted in a letter written by Ms. Bonin and sent to the attorney for the

Pariches, dated May 12, 1986. The acceptance letter stated:

"I am in receipt of and thank you for a copy of your correspondence to the Pariches dated May 7, 1986. I am presently preparing the paper work to accomplish the assignment."

Because this signed letter constituted an acceptance by the Judices, a written compromise agreement was effectuated. Thus, the two letters comprise a written agreement wherein the Judices agreed to release the Pariches from liability for the April 16, 1986 judgment in return for the following three commitments by the Pariches:

(1) Make a $15,000 cash payment on the judgment to the Judices;

(2) Assist and participate in a suit against State Farm for State Farm's failure to settle the Judices' claim against the Pariches; and

(3) Transfer a valid assignment of their rights against State Farm to the Judices.

Independently, the Assignment provides further written evidence that a compromise agreement existed between the parties. The Assignment states that in return for the Pariches' assistance and an assignment of their rights against State Farm, the Judices will release them from liability on the earlier judgment. When these three documents are viewed together, we conclude that the parties entered into a compromise agreement that was sufficient to meet the writing requirement of art. 3071. *Felder v. Georgia Pacific Corp.*, *supra.*

### 2.

■ The Judices focus their attack on the validity of the compromise agreement by arguing that mutual consent was lacking because there was no "meeting of the minds" concerning the terms of the agreement. The district court concluded that the effect of the agreement, that is, whether it was a total compromise of the lawsuit,

could not be deduced from an examination of the written documents only. The district court thus admitted parol evidence on the issue of the intent of the parties, found the testimony conflicting, and concluded that no meeting of the minds occurred. We disagree with the district court's analysis and hold that it erred both in interpreting the documents and in admitting parol evidence.

■ Appellees correctly point out that to have a valid compromise, there must be a meeting of the minds between the parties as to what they intended when the compromise was reached. *Succession of Magnani*, 450 So.2d 972 (La.App. 2d Cir.1984). A compromise agreement must therefore be unambiguous, perfect and complete in itself so that nothing is left for ascertainment by parol proof. *Flowers v. U.S. Fidelity & Guaranty Co.*, 367 So.2d 107 (La. App. 4th Cir.1979), *aff'd in part, amended and remanded on other grounds*, 381 So.2d 378 (La.1980), *superseded by statute as stated in Odessa House v. Goss*, 453 So.2d 299 (La.App. 3d Cir.1984). Finally, we note that a writing will not be considered a compromise if the court must receive parol evidence to reach that conclusion. *Senegal v. Delahoussaye*, 311 So.2d 58, 61 (La.App. 3d Cir.1975).

The district court, when determining the intent of the parties, only examined and considered the Assignment, but not the two letters dated May 6 and 12, 1986. Upon this limited and narrow focus, the district court concluded that the terms of the compromise were ambiguous because the Assignment makes no mention of the $15,000 payment to the Judices by the Pariches. Moreover, the district court found that the Assignment was ambiguous concerning the benefits the Pariches were to receive from the Judices under the compromise.

This conclusion is incorrect.[2] The documents that form the basis of the compro-

---

**2.** Because compromise agreements are contracts, we approach the review of the compromise the same as we would any other contract— on a *de novo* review standard. *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236,

95 S.Ct. 926, 934, 43 L.Ed.2d 148 (1975). The initial question which we review is whether an ambiguity existed in the compromise. This is a question of law. *North Shore Laboratories Corp. v. Cohen*, 721 F.2d 514, 519 (5th Cir.1983);

mise agreement, the two letters, unambiguously release the Pariches from liability for the accident judgment. The May 7, 1986 correspondence, which was accepted and acted upon without objection by the Judices' attorney, states unambiguously that in exchange for the Pariches actions, the Pariches are to receive "a *full release from any further liability.*" (emphasis added) Even more convincing is the language contained in the Assignment—a document that was drawn up by the attorney for Judices, Ms. Bonin. The Assignment states that the Pariches assign their rights to the Judices "in consideration of their *release* from that certain Judgment rendered against them in favor of John Glenn Judice and Audry [sic] Judice...." (emphasis added)

Furthermore, we are persuaded by the reasoning in *Felder v. Georgia Pacific Corp.*, 393 So.2d 394, 395 (La.App. 1st Cir. 1980), *aff'd*, 405 So.2d 521 (La.1981), that the prerequisites of a binding agreement are present here. In *Felder*, the compromise agreement stated: "I Walter Felder ... for the sole consideration of Seven Hundred & no/100 Dollars ... do hereby release...." The court held that this language was an unambiguous release, complete on its face, and that no parol evidence could be admitted to vary the terms. *Id.* Similarly, in the instant case, we hold that the May 7, 1986 letter and the Assignment unequivocally provided that a release was to be granted by the Judices. Because the term "release" has an unambiguous meaning, we hold that the district court erred in admitting parol evidence on the issue of mutual consent. *Paragon Resources, Inc. v. National Fuel Gas Distribution Corp.*, 695 F.2d 991, 995 (5th Cir.1983); *Felder v. Georgia Pacific Corp., supra.* Finding that the terms of the compromise agreement are unambiguous and complete, we conclude that mutual consent existed.

3.

■ The district court also stated that the compromise agreement was defective

because the Assignment was not signed by the Judices, which the district court held was further evidence of a lack of a meeting of the minds. We, however, interpret the purpose of the writing requirement in art. 3071 differently. The only purpose of the writing requirement is to ensure proper proof of extra-judicial agreements; specifically, proof of acquiescence in the agreement. *Bourgeois v. Franklin*, 389 So.2d 358 (La.1980). We acknowledge that this statutory requirement generally *implies* that the agreement be signed by both parties. *Felder v. Georgia, supra.*

Nevertheless, we cannot accept the proposition that the absence of the Judices' signatures on the Assignment is fatal to the compromise agreement. First, it is important to note that the Assignment is *not* the written compromise agreement; at best it is only one component of that agreement. As indicated above, the compromise agreement was created by the series of letters dated May 7 and 12, 1986. Indeed, the Assignment was only the attempted implementation of part of the compromise agreement, which was created and finalized by those earlier letters. Therefore, the district court's conclusion was error because any defect in the Assignment did not affect the mutual consent to the underlying compromise agreement.

■ Second, we also reject the district court's conclusion because the Assignment was clearly accepted by the Judices. Emphasizing that the purpose of the signature requirement is only to evince and assure that both parties have acquiesced to the agreement, *see Bourgeois v. Franklin, supra*, we think that the proof of complete acquiescence by the Judices is overwhelming in this case, notwithstanding the lack of the Judices' signatures. First, the Judices accepted a $15,000 cash payment from the Pariches pursuant to the May 7 and 12, 1986 letters. Second, the Judices accepted the assistance of the Pariches in suing State Farm for failure to settle. Third, the Pariches returned the executed Assignment to the Judices, and, although not

*Austin v. Decker Coal Co.*, 701 F.2d 420, 425–26 (5th Cir.), *cert. denied* 464 U.S. 938, 104 S.Ct.

348, 78 L.Ed.2d 314 (1983); *In re Stratford of Texas, Inc.*, 635 F.2d 365, 368 (5th Cir.1981).

signed by the Judices, both parties nevertheless acted upon the document by proceeding to try the case against State Farm. These actions are sufficient to establish that the Judices' acquiesced in the compromise agreement. At the very least, the Judices, having accepted everything requested of the Pariches, are now estopped to claim that they did not consent to the Assignment document on the sole grounds that they did not evidence their consent by signing.

Finally, the Judices' acquiescence to the compromise was independently established when the Assignment was accepted by their attorney, a point that is demonstrated by *Bonnecaze v. Hamrick*, 221 So.2d 638, 640–41 (La.App. 4th Cir.), *cert. denied*, 254 La. 461, 223 So.2d 870 (1969). The *Bonnecaze* court addressed an almost identical situation to the case at bar. It held that a compromise agreement, which provided for a complete and unconditional release from all claims and causes of action, became effective when signed by one party and returned to the other party's attorney, notwithstanding the fact that the other party was not aware of and did not sign the compromise agreement. *Id.* The court held that the knowledge of an attorney regarding the facts of a compromise agreement is imputed to the client and found an effective compromise agreement notwithstanding the absence of one party's signature. *Id.* at 641. The facts are even more compelling in the instant case. First, unlike in *Bonnecaze*, the attorney for the Judices actually drew up the Assignment. Second, the Judices, unlike the party in *Bonnecaze*, do not deny knowledge of either the compromise agreement or the Assignment. Thus, both the acceptance of the Assignment by the Judices' attorney, and the acceptance by the Judices of the consideration called for therein, sufficiently evidenced the existence of a compromise agreement and its execution by both parties. We conclude by noting that our result is entirely consistent with the purpose of art. 3071, which is simply to provide objective proof of the acquiescence of the parties to the compromise agreement.

4.

■ The Judices further argue that the compromise agreement is invalid because the Pariches did not perform the Assignment in the manner specified in the agreement. The district court found that there was no performance in the agreed upon manner because the Assignment was not signed before a notary and two witnesses, and because the document was not validly executed by the Pariches under Louisiana law.

We agree that by its definition, art. 3071 requires that in agreements for the purpose of preventing or ending a lawsuit, the parties must adjust their differences in writing by mutual consent in the manner in which they agreed upon. *Green Giant Co. v. Adcock Distribution Co.*, 420 So.2d 524, 526 (La.App. 2d Cir.1982). The question is therefore whether signing the Assignment before a notary, and after State Farm had filed an answer to the petition, were terms of the compromise agreement. We conclude that they were.

The manner in which the Pariches were to perform the Assignment of their rights against State Farm was stated in a letter sent by the Judices' attorney to the Pariches' attorney. That letter, dated January 12, 1987, stated:

> Also included is a copy of the assignment which I prepared to allow the Pariches' to assign their rights to John and Audry [sic] Judice *subsequent to an answer being filed on behalf of the defendants.* (Emphasis added)

Additionally, the attorney for the Pariches in the original suit, Mr. DeRouen, testified at the trial against State Farm that he had a telephone conversation with Mr. Guidry, attorney for the Pariches in the suit against State Farm, in which Guidry informed him that validly to assign the Pariches' litigious rights, it was necessary that a suit first be filed and answered before the Pariches executed the Assignment.

We find that these instructions constituted the "manner of performance" with respect to assigning the Pariches' rights to

the Judices. The letter instructed that the Pariches were not to sign the Assignment until after State Farm had filed an answer to the petition. We also find that the parties agreed that the document was to be signed before a notary.

It is undisputed that the Pariches signed the Assignment before State Farm filed an answer to the Petition. As the district court correctly noted, such an error voids the assignment of a litigious right.[3] When the Pariches executed the Assignment, no lawsuit had been filed against State Farm for its negligent failure to settle. Indeed, this suit was not filed until ten days *after* the Pariches executed the assignment of litigious rights. Thus, under art. 2653, the Assignment could not have been a valid assignment of a litigious right. We conclude, therefore, that because the Pariches did not perform the Assignment in the manner contemplated by the Judices, the assignment of litigious rights was legally defective.

### 5.

We must next examine the effect that the defective assignment had on the compromise agreement. At the outset, we emphasize that the Assignment was only part, though a very important part, of the consideration for the compromise agreement. The Pariches were also to tender $15,000 in cash and to assist the Judices in a suit against State Farm. The parties do not deny that the Pariches performed these actions as required and in the manner requested by the compromise agreement. The question presented, therefore, is what

effect the failure properly to assign the rights to the State Farm suit had on the entire compromise agreement. To answer this question, we must determine first whether the Pariches' failure to perform this part of the compromise agreement in the manner agreed upon constitutes a material breach; and second, if material, whether the Judices nonetheless acquiesced to or waived the breach when they decided to intervene.

On first impression, the Pariches' failure to perform would appear to be a material breach, and we acknowledge several cases that suggest that a material breach by one party to a compromise agreement abrogates the compromise agreement and reinstates the rights of the other party to sue under the original contract or judgment. *See Midlo & Lehmann v. Katz,* 195 So.2d 383 (La.App. 4th Cir.1967), and *Smith Construction Co. v. Brechtel,* 51 So.2d 643 (La.App.Orl.1951). Both of these cases addressed the effect of a total failure by one of the parties to a compromise agreement to perform any of the terms under the agreement. In *Midlo,* the appellant entirely neglected or refused to pay the amount he owed under the compromise agreement despite the fact that he was a "man of means" and fully capable of discharging this debt. Similarly, in *Brechtel,* the appellee testified that the appellant "never gave me a dime" towards discharging the amount due under the compromise contract.

The important dissimilarities between the facts of the *Midlo* and *Brechtel* cases and the instant case require us to reject the

---

**3.** Under Louisiana law, a right to recover from another, whether it is a debt, an account receivable, a judgment, or a cause of action, may be sold or assigned to a third party. However, a mere dispute may not be. *See generally* La.Civ. Code, Title VII, ch. 12 ("Of the Assignment or Transfer of Credits and Other Incorporeal Rights"). When the right to be assigned is only a cause of action, the law recognizes the incentive to foment litigation and the possibilities of barratry and champerty, and thus places special limitations on the ability to transfer these litigious rights. *Clement v. Sneed Bros.,* 238 La. 614, 116 So.2d 269 (1959) (purpose of these articles is prevention of unnecessary litigation). A nascent cause of action for a tort that is

nothing more than a dispute between two parties is not transferable. *Hawthorne v. Humble Oil & Refining Co.,* 210 So.2d 110 (La.App. 1st Cir.), *cert. denied,* 252 La. 832, 214 So.2d 160 (1968). *See U.S. Fidelity & Guaranty Co. v. Richardson,* 486 So.2d 929 (La.App. 1st Cir. 1986) (under La.Civ.Code art. 2653, where no contestation has developed, the right is not litigious; rather, it is only an incorporeal right more in the nature of a dispute). Once a dispute has developed into an actual lawsuit with a contestation or denial of liability by the defendant, however, it becomes a litigious right. *Id.* Such a litigious right is freely assignable. *See* La.Civ.Code Ann. art. 2652.

application of *Midlo* and *Brechtel* here. Unlike the situations in *Midlo* and *Brechtel,* the record here shows that the Pariches' actions amounted to substantial compliance with the terms of the compromise agreement. In this respect, our case is virtually identical to *Salling Wiping Cloth Co. v. Sewell, Inc.,* 419 So.2d 112, 117 (La.App. 2d Cir.1982), which rejected the application of *Midlo* and *Brechtel.* In *Salling,* the court held that if there is substantial compliance with the terms of the compromise agreement, there is no breach of the agreement because of a failure of perfect performance. *Id.* However, whether there has been substantial compliance with a given compromise agreement depends upon a case-by-case analysis. *Id.*

As in *Salling,* the rule of *Midlo* and *Brechtel* is inapplicable here because an examination of the compromise agreement as a whole, and an evaluation of the ultimate judgment against State Farm, shows that there was substantial compliance notwithstanding the breach in the manner of performance. The agreement between the parties also consisted of the Pariches making a $15,000 payment to the Judices and their cooperating with the Judices in collecting a judgment from State Farm. As counsel for the Judices admitted at trial, at the time the compromise agreement was entered into, the specific manner in which the Pariches were to perform their obligations was not expressly delineated. Nevertheless, it was clearly understood between the parties that, from the Judices' perspective, what was important was only the end result, that being the Judices' obtaining satisfaction of the April 16, 1986 judgment by means of a suit against State Farm.

Furthermore, the record shows that although the Pariches did not execute the Assignment in accordance with the terms of the assignment, they, nonetheless, proceeded as plaintiffs against State Farm, in full agreement with the Judices. This procedure enabled the Judices to intervene and ultimately to obtain the judgment against State Farm for its negligent failure to settle with the Pariches.

Finally, even if the Assignment had been validly notarized and signed at the proper time, it would have made no difference in the value of the ultimate judgment against State Farm. This result obtains because the total damages suffered by the Pariches on account of State Farm's negligent failure to settle the case, and consequently the total amount they could have assigned in any event, was the "excess" amount they paid to the Judices for their release from the judgment. This amount, which was fixed in the compromise, would not have changed even if the assignment of the litigious right had been effective. The Judices got exactly what they would have received had the Pariches validly assigned their rights to them under the Assignment. In short, the failure to perform the assignment in the manner agreed is not a material breach because it had no material effect on the outcome.[4]

We thus conclude that because the Pariches paid $15,000 to the Judices and fully assisted the Judices at trial, and because any defect in the manner of performance of the Assignment was immaterial to the ultimate recovery, the Pariches substantially performed their obligations under the compromise agreement. As a result of their substantial performance, we hold the compromise agreement valid and effective.[5]

4. For the same reasons, we reject the Judices' argument that the failure to properly notarize the Assignment renders the compromise agreement void.

5. Even if the failure to perform in the manner agreed upon were a material breach, the Judices, we think, would likely be estopped to deny the validity of the entire compromise agreement on the basis of the legal defect in the Assignment. The Judices accepted the Assignment, knowing that it had not been executed in the manner requested, at a time when they had

a full opportunity to correct its defects. The Judices could have simply sent another copy of the Assignment to the Pariches after State Farm had answered and had the Pariches sign it in front of a notary. The Judices, however, did not avail themselves of that opportunity. Equity weighs against allowing the Judices to set aside the entire compromise agreement, which is favorable to the Pariches, on the basis of a negligent error on the part of the Pariches, where the error was fully known to the Judices

## IV

Having concluded that a valid compromise agreement existed between the parties at the time of the suit against State Farm, we at last turn to the issue of what effect the compromise has on State Farm's liability to the Pariches, and hence the Judices. Louisiana law provides that in a suit for failure to settle, an insured is entitled to recover the amount of damages that he sustained as a result of the excess judgment. *Roberie v. Southern Farm Bureau Casualty Ins. Co.*, 250 La. 105, 194 So.2d 713 (1967); *Hodges v. Southern Farm Bureau Casualty Ins. Co.*, 411 So.2d 564, 566 (La.App. 1st Cir.1982); *Cousins v. State Farm Mut. Ins. Co., supra; Ward v. State Farm Mut. Auto. Ins. Co.*, 539 F.2d 1044, 1049 (5th Cir.1976); *Bohn v. Sentry Ins. Co.*, 681 F.Supp. 357, 363 (E.D.La.1988).

As noted above, the Judices granted the Pariches a "full release from further liability" in return for a $15,000 cash payment plus the other non-monetary consideration. This amount represents the Pariches' liability under the compromise agreement. The district court also found that during the initial settlement negotiations surrounding the automobile accident, the Pariches offered to pay the Judices $12,000 of their own money. In other words, if State Farm had agreed to pay the policy limits plus pre-judgment interest at that time and had settled the case, the Pariches personally would have provided $12,000 as part of that settlement. The amount of excess damages the Pariches suffered as a result of State Farm's negligence is, therefore, the difference between the two: $15,000 minus $12,000, or $3,000. This amount was the full extent of the damages the Pariches suffered. This amount, naturally, is therefore the upper limit of State Farm's liability in this suit for its negligent failure to settle. *Roberie, supra.* We conclude that State Farm is liable to the Pariches, and hence the Judices as intervenors, for the excess damages in the amount of $3,000.

## V

The Pariches argue that the district court erred by failing to award them penalties and attorney's fees under La.Rev. Stat. 22:658 B(1).[6] They argue that State Farm's actions in refusing to settle the Judices' claim were arbitrary and capricious. The district court found that State Farm's single lapse of care was the failure to contact the Pariches before rejecting the March 21 offer. It concluded that this was negligent, but not arbitrary and capricious. We agree with the district court.

## VI

For the foregoing reasons, the judgment of the district court is REVERSED and the case is REMANDED for entry of judgment in favor of the Judices in accordance with this opinion. On December 6, 1990, an order by the Court was entered denying petitions for rehearing.

REVERSED AND REMANDED.

---

who chose to remain silent and accept the Assignment.

6. Section 22:658 B(1) provided at the time:
   All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. *Failure to make* *such payment* within sixty days after receipt of such proofs and demand therefor, *when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty,* in addition to the amount of the loss, of ten percent damages on the total amount of the loss, payable to the insured, or to any of said employees, *together with all reasonable attorney fees* for the prosecution and collection of such loss. . . . (Emphasis added.)