672 So.2d 398 (1996)
Tonya McDOUGAL
v.
Dr. Juan BLANCH.
Terry HIGGINBOTHAM
v.
LAFOURCHE HOSPITAL SERVICE DISTRICT # 3 d/b/a Thibodaux Hospital & Health Center and Dr. Juan Blanch.
Nos. 95 CA 1377, 95 CA 1378.
Court of Appeal of Louisiana, First Circuit.
April 4, 1996.
Writ Denied June 7, 1996.
*399 Lawrence S. Kullman, New Orleans, for Plaintiff-Appellee, Tonya McDougal.
William S. Bordelon, Houma, for Plaintiff-Appellee, Terry Higginbotham.
Daniel J. Walker, Houma, for Defendant-Appellant, State of Louisiana-Patients Compensation Fund.
C. William Bradley, Jr., New Orleans, for Defendant-Appellee, Dr. Juan S. Blanch, Jr.
Charles A. Boggs, New Orleans, for Lafourche Parish Hospital Service Dist. # 3 d/b/a Thibodaux Hospital & Health Center.
Before CARTER and PITCHER, JJ., and CRAIN[1], J. Pro Tem.
HILLARY J. CRAIN, Judge Pro Tem.
On the morning of December 28, 1991, the plaintiff, Tonya McDougal, in her thirty-fourth week of pregnancy, began to experience vaginal bleeding. She was taken by ambulance to Thibodaux General Hospital. En route, she was actively bleeding and suffering lower abdominal pain. Her lower abdomen was rigid. Ms. McDougal did not have insurance.
Dr. Juan Blanch was the emergency room physician who saw Ms. McDougal. He determined that there was a good fetal heartbeat. He ordered Ms. McDougal's transfer to a state hospital, South Louisiana Medical Center.
Ms. McDougal was transported by ambulance. The trip took approximately 50 minutes. During the trip, she continued to bleed and experience pain.
Upon her arrival at South Louisiana Medical Center, Ms. McDougal was examined and noted to be in constant pain with copious vaginal bleeding. There was no fetal heartbeat. Ms. McDougal was informed that her baby was dead.
Labor was induced, and Ms. McDougal delivered her stillborn child. An episiotomy was performed, and she was given a blood transfusion to replace the blood which she had lost. The diagnosis was intrauterine *400 fetal demise caused by placental abruption. She remained in the hospital until December 31, 1991.
Suit was filed by Ms. McDougal in federal district court against Thibodaux General Hospital[2] under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd.[3] Ms. McDougal also filed suit in state district court, naming Dr. Juan Blanch as defendant, and alleging that Dr. Blanch's negligence caused the death of her baby.
Terry Higginbotham, the child's father, also instituted legal proceedings in state district court for the wrongful death of his child.[4] The two state court suits were consolidated.
A settlement agreement was reached between Ms. Tonya McDougal and Dr. Juan Blanch. Ms. McDougal received $100,000.00, agreeing, inter alia, to settle any claims which she may have under Louisiana law and also any claims under the federal EMTALA. She specifically reserved her right to seek damages in excess of $100,000.00 from the Louisiana Patient's Compensation Fund (PCF).
Terry Higginbotham filed a motion for summary judgment on the issue of Dr. Blanch's liability in light of the settlement. He argued that the doctor's liability was established and admitted, and the only remaining issue was one of damages. This motion was granted.
Dr. Blanch and Ms. McDougal filed a joint motion for approval of the settlement. A hearing was held to consider the joint motion and the merits of the plaintiffs' claims for damages. The motion seeking approval of the settlement was granted. The district court found Ms. McDougal's total damages to be $231,143.16, and Mr. Higginbotham's total damages to be $150,000.00. The PCF was ordered to pay to Ms. McDougal $131,143.16, the amount her damages exceeded the $100,000.00 paid by Dr. Blanch, and to pay Mr. Higginbotham $150,000.00. This appeal followed.
Defendant, PCF, first contends that the payment by Dr. Blanch's insurer was in settlement of a federal EMTALA claim rather than a state medical malpractice claim. Thus, PCF's liability was not triggered. This argument is without merit.
The Louisiana Medical Malpractice Act, La.R.S. 40:1299.41 et seq., provides a scheme of compensation for medical malpractice victims who suffer injury or death after being treated by qualified health care providers. Russo v. Vasquez, 94-2407, p. 5 (La. 1/17/95), 648 So.2d 879, 882. Each health care provider's liability is limited to $100,000.00 for all malpractice claims as a result of injuries to or death of any one patient. La.R.S. 40:1299.42(B)(2). Damages exceeding $100,000.00 are paid from the patient's compensation fund up to a limit of $500,000.00. La. R.S. 40:1299.42(B)(3).
The settlement documents reflect that plaintiff, Tonya McDougal, released Dr. Blanch, agreeing to settle and compromise any claims against him under Louisiana law and jurisprudence, including those for negligence. It cannot be disputed that Ms. McDougal had a medical malpractice claim against Dr. Blanch. The settlement effectively compromised that claim. Louisiana Revised Statute 40:1299.42 was triggered, and plaintiffs can pursue excess damages from the PCF.
Defendant next argues that plaintiffs must prove that the damage, the death of the fetus, was causally related to the admitted negligence of Dr. Blanch. PCF further argues that this must be accomplished by expert testimony.
Louisiana Revised Statute 40:1299.44(C)(5) provides in pertinent part:

*401 In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider had paid one hundred thousand dollars. (Emphasis added.)
This provision has been held by the Supreme Court to mean that payment by a health care provider of $100,000.00 is a statutory admission of liability. Stuka v. Fleming, 561 So.2d 1371, 1374 (La.1990), cert. denied, 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525 (1990). The health care provider's liability has been interpreted to mean liability for the "original harm." Jones v. St. Francis Cabrini Hospital, 94-2217 (La. 4/10/95), 652 So.2d 1331.
When there is an approved settlement by the health care provider with the claimant, liability of the health care provider cannot be contested by the PCF. The only issue that can be litigated between a claimant and the PCF is the amount of damages. Stuka v. Fleming, 561 So.2d at 1374. The term "liability" encompasses negligence and causation of the original harm. Since causation is an element of liability, and liability cannot be litigated by the PCF, causation also cannot be litigated.
In the instant case, the only damages sought are those caused by the original harm alleged, the mother's injuries and the wrongful death of the stillborn child. In arguing that the plaintiffs must prove that the damage, "the death of the fetus," was causally related to Dr. Blanch's negligence, the PCF is attempting to do indirectly what it cannot do directly; challenge the liability of Dr. Blanch for the death of the fetus. The PCF's argument on this issue is without merit.
The only issue remaining is that of quantum. Defendant assigns as error the trial court's finding that Tonya McDougal, mother of the stillborn child, and Terry Higginbotham, father of the stillborn child, sustained a total of $381,143.16 in damages. Tonya McDougal was awarded $75,000.00 in general damages, $150,000.00 for the wrongful death of her "unborn" child, $5,207.57 for medical expenses, and $935.59 for funeral expenses. Terry Higginbotham was awarded $150,000.00 for the wrongful death of his "unborn" child.
A trier of fact has much discretion in the assessment of damages in tort cases. La.C.C. art. 2324.1. In awarding general damages, this discretion has been described as great, and even vast. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
An appellate court's role in reviewing a damage award is not to decide what it considers to be an appropriate award, but to review the exercise of discretion by the trier of fact. It must first determine whether the award for the particular injuries and their effects, under the particular circumstances, on the particular injured person, is a clear abuse of the "much discretion" of the trier of fact. Youn v. Maritime Overseas Corp., 623 So.2d at 1260.
In reviewing general damage awards, only after a determination of an abuse of the trier of fact's vast discretion, is a resort to prior awards appropriate, and then for the purpose of determining the highest or lowest point which is reasonable within that discretion. Only when the award is beyond that which a reasonable trier of fact could assess for the effects of the particular injury, to the particular plaintiff, under the particular circumstances, should the reviewing court increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d at 1260-61.
We have thoroughly reviewed the testimony and evidence and cannot conclude that the court abused its discretion in the damages awarded. In oral reasons for judgment, the court recognized the great suffering experienced by the plaintiffs for the loss of their daughter. The court also addressed the additional pain and suffering experienced by Ms. McDougal in being told that her baby was dead, but that she would have to undergo delivery. Defendant's assignment of error has no merit.

*402 DECREE
For the foregoing reasons, the judgments of the district court are AFFIRMED. Costs of this appeal are assessed against the Louisiana Patient's Compensation Fund.
AFFIRMED.
NOTES
[1] Judge Hillary J. Crain, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The complete name of the party defendant is Lafourche Hospital Service District No. 3 d/b/a Thibodaux Hospital and Health Center.
[3] EMTALA is the federal anti-dumping statute which provides a civil remedy against a participating hospital, but does not provide such a remedy against a physician. Delaney v. Cade, 986 F.2d 387 (10th Cir.1993).
[4] At the time of the incident, the Higginbothams were separated. They eventually divorced. At the time of trial, they were remarried.