980 So.2d 55 (2008)
Tammy WEAVER and Isaac Weaver, Jr. individually and on behalf of their Deceased Daughter, Virginia Weaver; Emma Lynn Sellers, on behalf of her Minor Daughter, Tammy Thornton; and Susan Lucas, on behalf of her Minor Daughter, Deborah Laird
v.
Frank MALINDA, Nicoll's Limousine Service Inc., State National Insurance Co., The State of Louisiana through the Department of Transportation and Development, Tonti Management Corp., XYZ Insurance Company and the Parish of Jefferson, Department of Parkways.
No. 07-CA-708.
Court of Appeal of Louisiana, Fifth Circuit.
February 19, 2008.
Randall J. Meyer, Attorney at Law, New Orleans, Louisiana, for Plaintiff/Appellee, Tammy Thornton.
Lisa C. Lee, Neal R. Elliott, Jr., Weldon J. Hill, LaVon D. Raymond, Attorneys at Law, Baton Rouge, Louisiana, for Defendant/Appellant, Louisiana Department of Health and Hospitals.
*56 Panel composed of Judges EDWARD A. DUFRESNE, JR., SUSAN M. CHEHARDY, and CLARENCE E. McMANUS.
SUSAN M. CHEHARDY, Judge.
The issue on this appeal is how much plaintiff Tammy Thornton must reimburse the State of Louisiana, through the Department of Health and Hospitals, (hereafter "DHH"), out of settlement monies she received from third parties. DHH provided Medicaid payments on Thornton's behalf following her injuries in an automobile accident. The district court ruled that DHH may recover only twenty-five percent of its lien amount. We affirm.
Tammy Thornton was injured in an automobile collision on February 23, 2001. We relate the facts of the accident and initial litigation as set out in a prior appeal:
This case stems from an automobile accident that occurred on February 23, 2001 at the intersection of Jefferson Highway and Marmandie Ave. in Jefferson Parish, Louisiana. Stephen Laird was the driver of a Honda Accord traveling eastbound on Jefferson Highway. There were five passengers in the vehicle: Deborah Laird, Virginia Weaver, Tammy Thornton, Jenny Kimball, and Lyricka Gates. Laird attempted a left turn onto Marmandie Ave. and while crossing the westbound lanes of Jefferson Highway, his vehicle was struck by a Lincoln Towncar driven by Frank Malinda and owned by Nicoll's Limousine Service, Inc. Two passengers in the Honda Accord driven by Laird died as a result of the accident and the others were seriously injured.
Shrubs, bushes, trees and flowers were planted in the neutral ground of Jefferson Highway at the intersection with Marmandie Avenue where Laird attempted the left turn. The parents of each of the minor passengers in Laird's vehicle filed lawsuits against Malinda, Nicoll's Limousine Service, Jefferson Parish, the East Jefferson Levee District ("the Levee District"), Creekwood Mark Twain II Limited Partnership ("Creekwood"), Louisiana Landscape Specialty ("Louisiana Landscape"), its insurer Massachusetts Bay Insurance Company, and Travelers Insurance Company. These lawsuits were consolidated in the trial court. The plaintiffs claim the overgrown plants in the neutral ground obstructed the view of both Laird and Malinda and neither driver saw the other before the impact. The plaintiffs claim maintenance of the neutral ground was the responsibility of Jefferson Parish, the Levee District, Creekwood, and Louisiana Landscape.
Weaver v. Malinda, 05-693, pp-3-4 (La. App. 5 Cir. 3/28/06), 925 So.2d 763, 764.[1]
This lawsuit was filed in September 2001, and was supplemented and amended several times thereafter. DHH was never served with either the original petition or with any of the supplemental and amending petitions.
On October 30, 2006, the parties to the suit entered into a consent judgment that settled the plaintiffs' claims. Pursuant to the consent judgment, in compromise of her claim Thornton accepted $180,000.00, comprising $163,650.00 general damages and $16,350.00 medical special damages, representing 25% comparative fault on the part of all defendants.
On November 28, 2006, Thornton filed a Rule for Concursus to establish the *57 amount due DHH for its Medicaid lien.[2] She sought a court ruling that DHH can recover only the amount of medical bills actually paid by the tortfeasors, or $16,350.00. Thornton asserted that DHH had offered to accept $45,000.00 despite the settlement terms, but later advised it would not accept anything less than its entire lien amount, or $65,337.69. Thornton deposited the disputed funds into the court registry pending the court's determination of DHH's rights. DHH responded with a dilatory exception of unauthorized use of summary proceedings. On January 26, 2007, Thornton filed a First Amending Petition for Concursus, reiterating the allegations in the earlier-filed Rule for Concursus.
On March 13, 2007, DHH perfected its privilege, in the amount of $64,377.69, against all known third parties. DHH filed an answer to the concursus petition on March 15, 2007.
Thereafter Thornton filed a motion for summary judgment, which DHH opposed. On June 8, 2007, the trial court granted summary judgment. The court ruled that the recovery of DHH on its claim is limited to twenty-five percent of the lien asserted, or a total of $16,344.42. The court stated, "DHH clearly had knowledge of this suit; however, never asserted its rights under La.R.S. 46:446(A). DHH had the opportunity to intervene in this suit but did not do so." DHH appeals that ruling.
DHH assigns the following errors:
1. The trial court erred in limiting the amount due the State of Louisiana Department of Health and Hospitals for the Medicaid program (DHH) to 25% of its claim instead of ruling that DHH was entitled to full reimbursement or a greater percentage of its claim for reimbursement of medical assistance payments made on behalf of Tammy Thornton (Thornton) as a result of her accident of February 23, 2001.
2. The trial court erred in stating "DHH clearly had knowledge of this suit; however, never asserted its rights under La.R.S. 46:446(A)" and therefore, limiting or reducing the amount of DHH's recovery.
3. The trial court erred in granting Thornton's motion for summary judgment on the issue of the amount due the State of Louisiana, Department of Health and Hospitals for the Medicaid program as reimbursement for medical assistance payments made as a result [of] Thornton's accident of February 23, 2001.
DHH relies on the Louisiana statute that authorizes its recovery of Medicaid payments, La.R.S. 46:446, which states as follows in pertinent part:
A. When an injury has been sustained . . . by any person under circumstances creating in some third person or legal entity a legal liability or obligation to pay damages or compensation to that person or to his spouse, representative, or dependent, the Department of Health and Hospitals shall have a cause of action against such third party and/or may intervene in a suit filed by or on behalf of the injured, ill, or deceased person or his spouse, representative, or dependent against such third party to recover the assistance payments and medical expenses the Department of Health and Hospitals has paid or is obligated to pay on behalf of the injured, ill, or deceased *58 person in connection with said injury, illness, or death.
B. Any person or his spouse, representative, or dependent who files suit for the recovery of damages or compensation as the result of an injury, illness, or death for which assistance payments of medical expenses in whole or in part have been paid by the Department of Health and Hospitals, for which the department has an obligation to pay therefor, shall at the time suit is filed cause a copy of the petition to be served on the department, in the manner prescribed by Article 1313 of the Louisiana Code of Civil Procedure. Such person filing suit shall be responsible to the department to the extent of the medical payments or assistance received, interest, and attorney fees if he fails to have service made upon the department. Such person shall also be responsible to the department if he compromises his claim without giving the department written notice at least thirty days before the compromise is affected. This written notice shall include the name and date of birth of all injured or ill recipients and the name and address of the party or parties potentially liable for damages or compensation.
* * *
F. The Department of Health and Hospitals shall have a privilege for the medical assistance payments made by the department on behalf of an injured or ill Medicaid recipient on the amount payable to the injured recipient, his heirs, or legal representatives out of the total amount of any recovery or sum had, collected, or to be collected, whether by judgment or by settlement or compromise, from another person on account of such injuries, and on the amount payable by any insurance company under any contract providing for indemnity or compensation to the injured person. . . .
G. The privilege created herein shall become effective if, prior to the payment of insurance proceeds, or to the payment of any judgment, settlement, or compromise on account of injuries, a written notice containing the name and address of the injured person, and if known, the name of the person alleged to be liable to the injured person on account of the injuries received, is mailed by the Department of Health and Hospitals, or its attorney or agent, by certified mail, return receipt requested, to the injured person, to his attorney, to the person alleged to be liable to the injured person on account of the injuries sustained, to any insurance carrier which has insured such person against liability, and to any insurance company obligated by contract to pay indemnity or compensation to the injured person. This privilege shall be effective against the persons given notice according to the provisions hereof, and shall not be defeated nor rendered ineffective as against the persons who have been given such notice, because of failure to give such notice to other persons named herein. [Emphasis added.]
LIMITATION OF DHH'S RECOVERY TO 25% OF CLAIM
In ruling on Thornton's motion for summary judgment, the district court apparently relied on Arkansas Dept. of Health and Human Services v. Ahlborn, 547 U.S. 268, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006). In that case, the U.S. Supreme Court held that the federal Medicaid law did not authorize an Arkansas agency to assert a lien on a Medicaid recipient's settlement with third-party tortfeasors in an amount exceeding the portion of the settlement representing reimbursement *59 for medical costs. In a unanimous decision, the Supreme Court held the federal anti-lien provision (42 U.S.C. § 1396p) affirmatively prohibited the agency, the Arkansas Department of Health and Human Services (ADHS), from doing so, and Arkansas statutes were unenforceable to the extent they authorized assertion of a lien for a larger amount.
Ahlborn involved a Medicaid-eligible accident victim whose medical providers were paid $215,645.00 for services rendered as a result of severe injuries she received in an automobile accident. As a condition of her eligibility, she assigned to the ADHS her "right to any settlement, judgment, or award" she might receive from third parties responsible for her injuries "to the full extent of any amount which might be paid by Medicaid," in accordance with the Arkansas assignment statute. The Arkansas statutes provided that a lien is automatically imposed on a tort settlement obtained by a state Medicaid recipient following the payment of medical costs on her behalf. When the amount paid exceeds the portion of the settlement representing medical costs, the Arkansas statutes provided that satisfaction of the lien amount might be had out of settlement proceeds meant to compensate the recipient for other damages, such as pain and suffering, lost wages, and loss of future earnings.
Ms. Ahlborn later sued the tortfeasors and settled out of court for $550,000, which was not allocated between categories of damages. The ADHS had intervened in the suit and asserted a lien against the proceeds for the full $215,645.00, but did not ask to participate in the settlement negotiations or seek to reopen the judgment after the case was dismissed. The parties stipulated that, if the recipient's construction of the Medicaid statute was correct, the ADHS would be entitled to only $35,581.47, which represented reimbursement for her medical expenses.
The Supreme Court found that the Arkansas scheme was not supported by the federal third-party liability provisions. Section 1396k(a)(1)(A) of the Medicaid statute (42 U.S.C. § 1396k(a)(1)(A)) required only that recipients "assign the State any rights . . . to payment for medical care from any third party," not that they assign rights to other forms of payment. At the very least, the court said, the federal third-party liability provisions required an assignment of no more than the right to recover that portion of a settlement that represents payments for medical care. The court held the Arkansas scheme squarely conflicted with the federal anti-lien statute, 42 U.S.C. § 1396p(a)(1), which generally prohibits states from imposing a lien against the property of an individual prior to his death on account of medical assistance paid on his behalf. Assuming that the state's lien was consistent with federal law insofar as it attached to proceeds designated as medical payments, the state nonetheless could not escape the bar presented by the statute to encumbrance of the remainder of a settlement not associated with medical payments.
The court rejected the state's attempt to characterize the settlement proceeds as not the recipient's "property" and thus outside the federal anti-lien statute. The court also rejected arguments that the lien ought to reach more than medical damages because the recipient breached her duty to "cooperate" with the state agency or because tort settlements between private parties were ripe for manipulation. The court noted that, whatever the bounds of the duty to cooperate under § 1396k(a)(1)(C), there was no evidence in the record that the recipient had done anything to breach that duty. Further, *60 the risk that the parties to a settlement agreement might allocate away the state's interest, while more colorable, was not squarely presented, as the state had stipulated that only $35,581.47 of the settlement represented medical costs. Moreover, there were methods for avoiding the risk to the state's interests, and a countervailing concern that a rule of absolute priority might preclude settlement in a large number of cases and be unfair to the recipient in others. See "Personal injury recovery as affecting eligibility for, or duty to reimburse, public welfare assistance," 80 A.L.R.3d 772 (2006).
DHH argues that Ahlborn is distinguishable because here, unlike in Ahlborn, DHH did not stipulate either to the value of Thornton's case or to the amount to which DHH would be entitled if it could not place a lien on Thornton's settlement. Instead, Thornton pursued her settlement without involvement of DHH, and on August 24, 2006 DHH received a copy of Thornton's settlement agreement showing a lump sum settlement of $180,000 with no apportionment as to categories of damages. "Instead of having a judicial determination or stipulation as to the categories of damages, Thornton and the defendants decided the categories of damages and simply asked the court to sanction their agreement." Appellant's Brief, p. 7.
DHH asserts that another distinction is Thornton's failure to provide any information to DHH concerning the identity of the potentially liable third parties for several years during the pendency of her suit. "Thornton effectively prevented DHH from participating in her lawsuit and exercising its statutory rights against the liable third parties. . . ." Appellant's Brief, p. 7. Hence, DHH contends, Thornton cannot now enter into a consent judgment with the defendants to avoid reimbursing DHH for her medical expenses.
Rather, DHH asserts that absent a true judicial or jury allocation of damages, an Ahlborn analysis begins with the value of the case, and the value of Thornton's case has not been determined. DHH offers its own formula for calculating the value, derived from an online source,[3] under which DHH is willing to stipulate that the value of Thornton's case is $197,145.00. Calculating from that figure, Thornton's total settlement amount of $180,000.00 represents approximately 91.3% of her case's total value, and DHH asserts it thus is entitled to 91.3% of the total value of its claim. DHH, rounding up the amount of Medicaid payments to $65,000.00, asserts it is entitled to 91.3% of that amount, or $58,928.39.
DHH further asserts that even if DHH is barred by the wording of the consent judgment from collecting its entire lien from the funds on deposit in the concursus, DHH still has a right under La.R.S. 46:446 and 46:446.1 to collect its entire lien from Thornton personally, from her attorney, and from the third-party defendants.
Here, however, we are concerned only with the funds subject to the concursus proceeding. We find that, pursuant to Ahlborn, DHH may be reimbursed only from the portion of the settlement allocated to medical expenses, which was $16,344.42, the amount awarded by the district court.
DHH'S ACTUAL KNOWLEDGE OF SUIT AND FAILURE TO INTERVENE
DHH contends it does not lose its right to full reimbursement because it chooses *61 to pursue recovery through one means instead of another. DHH insists it did not have sufficient information during the pendency of Thornton's suit to pursue its rights under La.R.S. 46:446(A), which permits DHH to file suit against third parties or to intervene in a suit filed by the injured person against such third parties.
DHH argues that Thornton's failure to comply with La.R.S. 46:446(B) by serving a copy of her petition on DHH resulted in DHH not having the information needed to protect its rights under Section A of the statute. DHH acknowledges it knew that Thornton suffered an injury or illness; however, from the filing of the lawsuit through the settlement with the defendants, "DHH had no knowledge as to the cause or causes of the injury, whether the injury was self-inflicted or accidental, and if accidental, the identity of the liable or potentially liable third parties. DHH's limited knowledge was the result of its internal procedures, not the actions of Thornton."
DHH states that its Third Party Liability Recovery Unit requested information from Thornton concerning her injury, including the name of her attorney if any, in 2001. After Thornton advised DHH of her attorney's name, on June 25, 2001 DHH perfected its privilege by sending a certified letter to Thornton and her counsel. In the letter, DHH advised Thornton of its rights and her obligation under La.R.S. 46:446 and requested a copy of her petition for damages. Thornton never served a copy of the petition on DHH, however. DHH asserts Thornton also failed to provide information as to the identity of potentially liable third parties.
In a letter dated August 24, 2005, Thornton's attorney requested that DHH confirm or update the amount paid by Medicaid. In a certified letter dated September 7, 2005, DHH advised that Medicaid had paid $65,377.69 in medical bills on behalf of Thornton (an amount subsequently corrected to $64,543.69). DHH again advised Thornton of her obligation to serve a copy of the petition on DHH, and again requested the names and addresses of all potentially liable tortfeasors and insurers. Thornton did not serve DHH with the petition, nor did she provide the information on potentially liable third parties. In a letter dated June 21, 2006, Thornton's attorney advised DHH of the injuries suffered by Thornton, but did not provide information regarding third parties.
DHH asserts that it did not clearly have knowledge of this lawsuit and, hence, Thornton effectively prevented DHH from availing itself of its statutory rights. Hence, DHH contends Thornton and her attorney are liable under La.R.S. 46:446(B) to the full extent of medical payments made.
We find no merit to these claims under the circumstances of this proceeding. Because it is a concursus proceeding, the only issue is the rights of the parties to the concursus to the funds on deposit in the registry of the court. As discussed above, we find that DHH is entitled only to the amount of the funds designated as recovery for medical expenses. DHH has made no effort to raise properly any other claims it may have against Thornton or others. Instead, DHH merely answered the concursus petition with a general denial and asserted its claim for reimbursement of $64,543.69. Accordingly, the rights of DHH against other property of Thornton or other persons designated in the statute are not properly before us in the concursus proceeding.
Propriety of Summary Judgment
DHH asserts this matter was improperly decided on Thornton's motion for summary judgment, because there are unresolved issues of fact, namely the value of *62 Thornton's case and the amount due DHH as reimbursement for Medicaid payments made on behalf of Thornton. We find no merit to this assignment, for the reasons set out in our discussion of the other assignments of error.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
NOTES
[1] That appeal affirmed a summary judgment that dismissed the claims against the East Jefferson Levee District.
[2] Tammy Thornton was a minor when the suit was originally filed, so her mother, Emma Lynn Sellers, filed suit as her representative. Thornton attained majority during the course of the litigation, and now appears on her own behalf.
[3] DHH cites Premier Information Source for Auto Accident claims, http://www. autoaccidentclaims.com.