# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-736


KENNETH DUPLECHAIN, ET AL.

VERSUS

FIROOZ JALILI, ET AL.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20063905
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Billy Howard Ezell, Judges.

**Amy, J., concurs in the result and assigns separate reasons.**


**REVERSED AND RENDERED.**


Steven Broussard
802 South Huntington
Sulphur, LA 70663
Telephone: (337) 527-7006
COUNSEL FOR:
    Plaintiff/Appellant - Kenneth Duplechain, et al.

John Elliott Baker
Special Assistant Attorney General
321 N. Vermont Street - #208
Covington, LA 70433
Telephone: (985) 867-9068
COUNSEL FOR:
    Defendant/Appellee - State of Louisiana

**Randall Earl Hart**
**Broussard & Hart, LLC**
**1301 Common Street**
**Lake Charles, LA 70601**
**Telephone: (337) 439-2450**
**COUNSEL FOR:**
    **Plaintiff/Appellant - Kenneth Duplechain, et al.**

**Nadia Marie de la Houssaye**
**Jones, Walker, Waechter, Poitevent, Carrère & Denègre, L.L.P.**
**P. O. Drawer 3408**
**Lafayette, LA 70502-3408**
**Telephone: (337) 262-9000**
**COUNSEL FOR:**
    **Defendant/Appellee - Louisiana Patients' Compensation Fund**

**THIBODEAUX, Chief Judge.**

The plaintiffs-appellants, Cynthia Duplechain, individually and in her capacity as the administratrix of the estate of her minor son, Conner Duplechain, and Kenneth Duplechain (the Duplechains), appeal the denial of their motion for summary judgment. The Duplechains' motion sought a determination that they were entitled to recover legal interest on medical bills paid by Medicaid through the Louisiana Department of Health and Hospitals (DHH/Medicaid). The defendant-appellee from whom the interest is sought in this matter is the Louisiana Patients' Compensation Fund (PCF).

The trial court found that the Duplechains were required to assign their recovery rights to DHH/Medicaid and that they had no right to recover legal interest on the medical payments made by DHH/Medicaid. Finding that the trial court erred as a matter of law in interpreting the applicable statutes, we reverse the judgment of the trial court and grant summary judgment in favor of the Duplechains.

I.

## ISSUE

We must decide whether the trial court erred as a matter of law in denying summary judgment to the plaintiffs on the issue of whether legal interest is due on medical bills paid by Medicaid.

II.

## FACTS AND PROCEDURAL HISTORY

In December of 2003, five-month-old Conner Duplechain was severely injured when Dr. Firooz Jalili, a pediatric gastroenterologist, perforated Conner's esophagus during a routine endoscopy. Dr. Jalili mistakenly inflated Conner's mediastinum and blocked blood flow to Conner's heart, putting him in cardiac arrest

and leaving him with a severe and irreversible hypoxic brain injury. Seven years later, Conner is fed through a tube, is cortically blind, cannot walk, talk, or sit up, and his condition is permanent.

The Duplechains filed a claim with the PCF. The Medical Review panel found in favor of Dr. Jalili. The Duplechains filed suit, and DHH/Medicaid filed an intervention for the $96,070.32 that it had paid in medical bills on behalf of Conner. Five years later, after the Duplechains had accumulated litigation expenses estimated at over $120,000.00, Dr. Jalili settled his liability in the case for $100,000.00. The Duplechains sought all remaining damages from the PCF, with full legal interest on their damages. They entered into a partial settlement with the PCF on all issues except (1) past custodial care costs, plus interest, and (2) the legal interest on the portion of damages paid by Medicaid.

On May 19, 2009, a judgment was rendered granting Mrs. Duplechain the authority to settle the claims against Dr. Jalili and the PCF for $1,020,000.00. The PCF funded the settlement, including the $96,070.32 Medicaid lien. The PCF paid legal interest on $400,000.00 in general damages and on $279,999.88 in medical bills paid by an ERISA lienholder, Blue Cross/Blue Shield of Georgia.

The Duplechains negotiated with DHH/Medicaid for a lien reduction and ultimately paid Medicaid $86,463.29. Hence, the Medicaid lien has been reimbursed, and DHH/Medicaid is not making a claim for any additional funds.

The PCF ultimately settled with the Duplechains for the past custodial care, plus interest, and the only claim remaining for trial was the legal interest on the Medicaid-paid damages of $96,070.32. The Duplechains filed a motion for summary judgment on that issue, and the trial court entered a judgment denying their motion in February of 2010. The Duplechains filed this appeal on the denial of their motion

for summary judgment on the issue of legal interest on Medicaid-paid damages. This is a matter of first impression. Finding no support for the trial court's judgment, and finding error in the trial court's interpretation of the applicable statutes, we reverse for the reasons more fully set forth below.

## III.

## LAW AND DISCUSSION

### Standard of Review

When an appellate court finds that a reversible error of law was made in the trial court, it must conduct a de novo review of the entire record. *Rosell v. ESCO,* 549 So.2d 840 (La.1989). Appellate courts perform a de novo review upon a motion for summary judgment. *Guilbeaux v. Times of Acadiana, Inc.*, 96-360 (La.App. 3 Cir. 3/26/97), 693 So.2d 1183, *writ denied*, 97-1840 (La. 10/17/97), 701 So.2d 1327.

### *The Trial Court's Judgment*

The Duplechains contend that the trial court erred as a matter of law when it ruled that legal interest does not accrue in favor of the plaintiffs on medical bills paid by Medicaid. We agree. In its judgment denying the plaintiffs' motion for summary judgment, the trial court stated:

> This court finds that legal interest in favor of the Plaintiffs is not earned on the amounts paid by Medicaid. Because the statutes governing Medicaid require the Plaintiffs to assign recovery rights to the Louisiana Department of Health and Hospitals, Plaintiffs have no right to recover legal interest on such sums.

The trial court's judgment reflects an erroneous interpretation and application of the Medicaid statutes. DHH/Medicaid *was* reimbursed in this case; its lien or privilege *was* paid. Therefore, neither the right to recovery by DHH/Medicaid, nor the assignment of rights by the plaintiffs is at issue.

3

More specifically, La.R.S. 46:446(A) provides DHH/Medicaid with a right of intervention and a right of recovery against liable third parties for amounts paid by Medicaid on behalf of the tort victim. Likewise, La.R.S. 46:446(F) creates a *privilege* in favor of Medicaid to be reimbursed its payments out of any recovery the tort victim collects from a third person or insurance company, *whether by judgment or settlement or tender*. In general, this means that Medicaid gets reimbursed *before* the tort victim takes ownership of the proceeds of his or her claim. However, the privilege is not exclusive, nor is it first-ranked, as La.R.S. 46:446(F) specifically places the attorney's privilege over that of Medicaid. Additionally, La.R.S. 46:446(H) holds third parties, insurers, and attorneys responsible to DHH/Medicaid for reimbursement of the lien for the amount of the privilege.

The Medicaid statutes further provide that where Medicaid has paid for health care items or services furnished to an individual, and a third party has legal liability to make those payments, "the state [DHH] is deemed to have acquired the rights of the individual to payment by any other party for those health care items or services." La.R.S. 46:446.2(D). Additionally, La.R.S. 46:153(E) provides that the Medicaid recipient "shall be deemed to have made an assignment to the department [DHH] of his right to . . . benefits owed . . . by any third party." Hence, there is a statutory assignments of rights to DHH/Medicaid *until* Medicaid is reimbursed, but the assignment of rights has nothing to do with legal interest owed by the tortfeasor.

In this case, the Duplechains satisfied the Medicaid lien and extinguished their assignment of rights to DHH/Medicaid when their attorney wrote a check for $86,463.29 to DHH/Medicaid on June 5, 2009, *before* the plaintiffs received the funds from PCF in July 2009. DHH/Medicaid is not asserting a claim for legal interest or additional funds in this case, and any assignment or obligation by

4

the plaintiffs has been fulfilled. Accordingly, as indicated above, neither DHH/Medicaid's recovery rights nor the plaintiffs' assignment of rights is at issue.

The trial court concluded that any interest owed on the Medicaid payment would be owed to DHH, not to the plaintiffs. This is also error. Louisiana Revised Statutes 46:446.6 (B)(2) (emphasis added) provides that any health insurer must "[a]ccept the department's [DHH's] right of recovery and the Medicaid recipient's assignment to the department of any right to payment from the health insurer *for an item or service* for which payment has been made under the [Medicaid] Program." The recovery of Medicaid benefits from a recipient's settlement of a tort claim is limited to the *medical expenses* allocated in the settlement. *Weaver v. Malinda*, 07-708 (La.App. 5 Cir. 2/19/08), 980 So.2d 55. *Weaver* relied upon *Arkansas Department of Health and Human Services v. Ahlborn*, 547 U.S. 268, 126 S.Ct. 1752 (2006).

In *Ahlborn*, the United States Supreme Court held that the federal Medicaid law did not authorize an Arkansas state agency to assert a lien on a Medicaid recipient's settlement with third-party tortfeasors in an amount exceeding the portion of the settlement representing medical expenses. The court held that 42 U.S.C. § 1396p, the federal anti-lien provision, affirmatively prohibited the state Medicaid agency, the Arkansas Department of Health and Human Services (ADHS), from asserting a lien for a larger amount.

The *Ahlborn* court further found that the federal third-party liability provisions of the Medicaid statute, 42 U.S.C. § 1396k(a)(1)(A), required only that recipients "assign the State any rights . . . to payment for medical care from any third party," not that they assign rights to other forms of payment. Further, where the tortfeasor settled for only one-sixth of Ahlborn's overall damages, and the state

5

stipulated that only $35,581.47 of the settlement was for medical expenses, the state was limited to that amount, even though Medicaid had paid $215,645.30 to providers. The court found that the requirement of 42 U.S.C. § 1396k(b), that Medicaid be reimbursed *before* the plaintiff, did *not* show that Medicaid must be paid *in full* from any settlement.

While *Weaver* and *Ahlborn* did not address the third party's legal liability for interest, those cases support our finding that the trial court erred at trial in stating that any legal interest owed should be paid to Medicaid. We have been unable to find a statute in the Medicaid scheme for recovery *by Medicaid* of legal interest owed to the recipient/plaintiff by the tortfeasor or any other third party.

*Legal Interest Under La.R.S. 13:4203*

The Duplechains assert that La.R.S. 13:4203 is applicable to the question of legal interest in all tort cases. It provides: "Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, 'ex delicto', which may be rendered by any of the courts." The cases interpreting La.R.S. 13:4203 emphasize that an award of legal interest in tort cases is *not discretionary* with the court. *Turner v. Ostrowe*, 01-1935 (La.App. 1 Cir. 9/27/02), 828 So.2d 1212, *writ denied*, 02-2940 (La. 2/7/03), 836 So.2d 107; *Odom v. City of Lake Charles*, 00-1050 (La.App. 3 Cir. 1/31/01), 790 So.2d 51, *writ denied*, 01-1198 (La. 6/22/01), 794 So.2d 787. Legal interest on judgments for damages in tort cases is an operation of law. The interest attaches automatically until the judgment is paid regardless of whether it was prayed for in the petition or mentioned in the judgment. *Stewart v. Ice*, 07-871 (La.App. 4 Cir. 4/9/08), 982 So.2d 928, *writ denied*, 08-1000 (La. 8/29/08), 989 So.2d 101.

Under La.R.S. 13:4203, the date of judicial demand is the date the complaint is filed, not the date of judgment. *Byrd v. Hunt Tool Shipyards, Inc.*, 650

6

F.2d 44 (5th Cir. 1981). When Section 4203 was enacted in 1916, it created a substantive right to such interest in tort plaintiffs. With its enactment, the Louisiana legislature's primary purpose was to liberalize, not restrict, the existing judicial approach to legal interest in tort cases. *American Cyanamid Co. v. Electrical Industries, Inc.*, 630 F.2d 1123, 1129-30 (5th Cir. 1980). There is no exception for Medicaid-paid damages under La.R.S. 13:4203.

In its brief, PCF states that it "does not contest that interest accrues on all tort damages and non-Medicaid medical bills from the date of judicial demand through the date of settlement as is evidence[d] by the fact that the PCF has paid full interest on said damages. Because there is no judgment casting the PCF with interest on amounts paid to Medicaid the [p]laintiffs' reliance on [La.]R.S. 13:4203 is misplaced." These statements are self-contradictory. The PCF admits to having paid legal interest on the other tort damages, which includes the Blue Cross lienholder, and there was no known "judgment" imposing interest on those amounts; yet, PCF seeks to carve out an exception for amounts paid by and reimbursed to Medicaid. As stated above, there is no exception under La.R.S. 13:4203 for Medicaid-paid amounts.

With regard to settlements, as PCF acknowledges, interest is paid on tort damages recovered through settlements. In *King v. Illinois National Insurance Co.*, 34,473 (La.App. 2 Cir. 2/28/01), 782 So.2d 1104, 1111, *writs denied*, 01-1244, 01-1245 (La. 6/22/01), 794 So.2d 788, Illinois National contended that the fixing of legal interest from judicial demand "on all judgments" under La.R.S. 13:4203 was inapplicable in its case since it had avoided judgment by its pre-trial tender of the policy limits. However, the court found that the long-recognized principle for the assessment of legal interest remained applicable for an insurer's delay in tendering its policy limits after the filing of suit. Similarly, we have held an insurer arbitrary

7

and capricious for failure to accept an offer to settle for the policy limits plus pre-judgment legal interest where there is no real question of liability. *See Hodge v. American Fidelity Fire Ins. Co.*, 486 So.2d 233 (La.App. 3 Cir.), *writ denied*, 489 So.2d 917 (La.1986).

In the present case, the district court signed a judgment on May 19, 2009, authorizing Cynthia Duplechain, as natural tutrix of Conner Duplechain, to compromise the claims on the child's behalf against Dr. Jalili and the PCF for one million twenty thousand ($1,020,000.00) dollars. The judgment also authorized Ms. Duplechain to release the parties and to receive and manage the settlement funds in the manner and form prescribed by law. While this is not a judgment "casting" the PCF with interest, it is a judgment on a settlement in a medical malpractice case, and the statutes provide that pre-judgment interest attaches as a matter of law.

*Legal Interest Under La.Code Civ.P. art. 1921*

The Louisiana Code of Civil Procedure also provides for mandatory legal interest. More specifically, La.Code Civ.P. art. 1921 states: "[t]he court shall award interest in the judgment as prayed for or as provided by law." The "shall" in article 1921 is mandatory, and the court lacks discretion to deny interest if interest is prayed for or is provided by law. *Bickham v. Bickham*, 02-1307 (La.App. 1 Cir. 5/9/03), 849 So.2d 707. In cases ex delicto and ex contractu, prejudgment interest is awarded to make an injured party whole by compensating that party for the time-value of money to which that party was entitled, but over which defendant had wrongfully continued to exercise dominion and control while suit was pending. *Miller v. Conagra, Inc.*, 07-747 (La.App. 3 Cir. 12/5/07), 970 So.2d 1268, *writ granted*, 08-21 (La. 3/7/08), 977 So.2d 915, *affirmed in part, reversed in part*, 08-21 (La. 9/8/08), 991 So.2d 445. All liability insurers owe interest on judgments in tort

cases, up to their policy limits, from the date of judicial demand. *Edwards v. Daugherty*, 03-2103 (La. 10/1/04), 883 So.2d 932.

*PCF is a Liability Insurer Under the Medical Malpractice Act*

The PCF cites numerous Medicaid statutes and argues its obligations to DHH/Medicaid as a "health insurer" under the Medicaid Scheme, La.R.S. 46:446.6(A)(2). The PCF, however, is an excess liability insurer under the Medical Malpractice scheme which created it.

More specifically, La.R.S. 40:1299.42(B)(1) provides that the total amount recoverable for all medical malpractice claims "shall not exceed five hundred thousand dollars plus interest and cost." The $500,000.00 cap does not include future medical care and related benefits, which are provided for under La.R.S. 40:1299.43. Louisiana Revised Statutes 40.1299.43(C) provides that a patient may make a claim to the PCF for future medical care. Louisiana Revised Statutes 40:1299.43(D) specifically states: "Payments for medical care and related benefits shall be paid by the patient's compensation fund without regard to the five hundred thousand dollar limitation imposed in R.S. 40:1299.42."

Louisiana Revised Statutes 40:1299.44, entitled, "Patient's Compensation Fund," provides that the [PCF] board "shall issue payment" of approved claims within thirty days of its receipt of a certified copy of a *judgment, settlement, or arbitration award*, in excess of one hundred thousand dollars against a health care provider. La.R.S. 40:1299.44(B). The PCF cannot contest liability when there is a binding settlement for $100,000.00 by the health care provider, either before or after trial. *Bijou v. Alton Ochsner Medical Foundation*, 95-3074 (La. 9/5/96), 679 So.2d 893. A settlement payment by the physician's insurer triggers the

liability of the PCF. *McDougal v. Blanch*, 95-1377 (La.App. 1 Cir. 4/4/96), 672 So.2d 398, *writ denied*, 96-1129 (La. 6/7/96), 674 So.2d 973.

Once a qualified health care provider or its insurer pays $100,000.00 to a medical malpractice victim, the liability of the health care provider is to be considered as admitted and established pursuant to the statute regarding the PCF, and the only contested issue remaining between the victim and the PCF is the amount of the victim's damages in excess of the amount already paid. *Harrison v. Smith*, 02-477 (La.App. 5 Cir. 11/26/02), 832 So.2d 1064, *writ denied*, 03-380 (La. 6/27/03), 847 So.2d 1277.

The plaintiffs are alleviated of the duty of proving the standard of care and breach by the health care provider once the provider has paid the statutory limit of $100,000.00 in settlement, which constitutes a statutory admission of liability; the plaintiffs are then merely responsible for proving the extent to which the malpractice caused damages in excess of the statutory limit, thereby making the PCF liable for the balance of the uncompensated damages. *Judalet v. Kusalavage*, 00-59 (La.App. 3 Cir. 6/21/00), 762 So.2d 1128, *writ denied*, 00-2240 (La. 10/27/00), 772 So.2d 653.

None of the foregoing statutes or jurisprudence provides an exception for Medicaid-paid tort damages, and the Medical Malpractice scheme specifically provides for the payment of legal interest by the PCF on *all* malpractice recoveries above $100,000.00.

*Legal Interest Under the Medical Malpractice Act, La.R.S. 40:1299.47(M)*

Under the Medical Malpractice Act, La.R.S. 40:1299.47(M) provides: "[l]egal interest shall accrue from the date of filing of the complaint with the board on a judgment rendered by a court in a suit for medical malpractice brought after compliance with this Part." Pursuant to La.R.S. 40:1299.41(A)(3), the "'Board'

means the Patient's Compensation Fund Oversight Board created in R.S. 40:1299.44(D)." Accordingly, the jurisprudence interpreting La.R.S. 40:1299.47(M) specifically holds the PCF liable for interest on the plaintiffs' damages after the first $100,000.00 paid by the health care provider.

When medical malpractice victims compromised their action by settling claims against qualified providers, they compromised their right to receive legal interest on any amount of damages they might recover in a judgment against the providers, but they did not compromise their right under the Louisiana Medical Malpractice Act to receive legal interest against the PCF on any damage award up to the $500,000.00 cap. *See Castillo v. Montelepre, Inc.*, 999 F.2d 931 (5th Cir. 1993). However, in 1991, La.R.S. 40:1299.42 was amended to provide that the medical provider was liable for the first $100,000.00 plus the legal interest on that amount. Accordingly, in *Ceasar v. Barry*, 04-1383 (La.App. 3 Cir. 2/2/05), 894 So.2d 571, *writ denied*, 05-606 (La. 5/6/05), 901 So.2d 1097, we held the PCF liable to the patient for $400,000.00 out of $500,000.00 *plus interest* on the $400,000.00 excess judgment. *See also, Futch v. Attwood*, 97-259 (La.App. 3 Cir. 6/18/97), 698 So.2d 958, *writ granted in part*, 97-2664 (La. 2/6/98), 709 So.2d 721.

Our courts routinely hold that medical malpractice victims and survivors are entitled to legal interest on the *entire* amount of the judgment, and no exception is made for amounts paid by Medicaid. The Medical Malpractice Act provides that legal interest accrues from the date of the filing of the complaint with the oversight board and that the $500,000.00 cap on damages excludes interest and costs. *State Through Dept. of Social Services on Behalf of Harden v. Southern Baptist Hosp.*, 94-2228 (La.App. 4 Cir. 10/12/95), 663 So.2d 443, *writ denied*, 95-2751 (La. 1/26/96), 666 So.2d 676. The medical provider/defendant is responsible for the first

11

$100,000.00 plus interest, and the PCF is responsible for all amounts, plus interest, in excess of $100,000.00. *See Watkins v. Lake Charles Memorial Hosp.*, 04-355 (La.App. 3 Cir. 12/15/04), 896 So.2d 130, *writ denied*, 05-145 (La. 4/8/05), 898 So.2d 1279; *Patient's Compensation Fund Oversight Bd. v. Succession of Hedgepeth*, 98-1695 (La.App. 1 Cir. 9/24/99), 754 So.2d 1036, *writ denied*, 99-2962 (La. 12/17/99), 752 So.2d 857; *Gladney v. Sneed*, 32,107 (La.App. 2 Cir. 8/18/99), 742 So.2d 642, *writ denied*, 99-2930 (La. 1/14/00), 753 So.2d 215.

As previously indicated, the PCF acknowledges that it owes legal interest on all other damages for which it is liable, and admits that it paid legal interest on the Blue Cross amounts it covered. However, PCF attempts to carve out an exception for amounts paid by Medicaid, where no exception exists. Those things that the legislature wanted to exclude would be excepted explicitly. Such is not the case here.

*Purpose of Legal Interest*

PCF argues that legal interest is intended to compensate the plaintiff for money he was deprived of during litigation and that there was no deprivation of funds here. The Duplechains argue that deprivation is not a prerequisite in assessing legal interest because legal interest is paid on future damages. Under the Medical Malpractice Act, La.R.S. 40:1299.43(C) provides that once a judgment is entered or a settlement is reached between a patient and the PCF, and future medical care is agreed upon, the patient may make a claim to the PCF for all future medical care and related benefits made necessary by the malpractice. However, in medical malpractice cases, future medical care is segregated from an overall award, and the interest on future medical benefits is payable from the date of the filing of the complaint or from

12

the date that the expenses were incurred, whichever is later. *Hall v. Brookshire Bros., Ltd.*, 02-2404 (La. 6/27/03), 848 So.2d 559.

The reference to legal interest designed to compensate ultimately victorious plaintiffs for the time value (interest) of funds of which they have been deprived, is based upon the notion that this is money which the plaintiffs could have invested and earned interest on during the pendency of the litigation. *See Futch*, 698 So.2d 958. However, once an injured plaintiff has to file suit to enforce a right to recovery, legal interest begins to accrue. The fact that Medicaid temporarily paid damages assessed to Dr. Jalili and the PCF does not change the nature of the damages or the plaintiff's right to interest on those damages. In fact, research reveals that legal interest accrues in tort cases, unless the plaintiff's remedy is a non-monetary award. *See Scott v. American Tobacco Co., Inc.*, 04-2095 (La.App. 4 Cir. 2/7/07), 949 So.2d 1266, *writs denied*, 07-654, 07-662 (La. 1/7/08), 973 So.2d 740, *cert. denied*, 553 U.S. 1094, 128 S.Ct. 2908 (2008) (the jury award consisted of a smoking cessation program as the plaintiffs' remedy for the defendant tobacco companies' conspiracy to conceal the extent of nicotine addiction, and the non-monetary remedy did not qualify for prejudgment interest).

In opposing the Duplechains appeal and seeking an affirmation of the trial court's judgment, the PCF argues that *Bozeman v. Department of Transportation and Development*, 03-1016 (La. 7/2/04), 879 So.2d 692, is applicable in this case because it holds that a plaintiff cannot recover amounts written off by a medical provider who has reduced its fees due to Medicaid requirements. We disagree. The only similarity between *Bozeman* and the present case is that both cases involved Medicaid payments.

*Bozeman* had nothing to do with legal interest but rather addressed, as a matter of first impression, the application of the collateral source rule to medical expenses written off or contractually adjusted by health care providers pursuant to the requirements of the Medicaid program. In *Bozeman*, the deceased motorist's widow sought to recover the full amount of the medical bills, even though the healthcare providers had written off $266,879.92 of their bills in accepting payment from Medicaid. The Louisiana Supreme Court found previous jurisprudence inconsistent in deciding whether to apply the collateral source rule to Medicaid write-offs. In discussing the three approaches used by other courts, the court in *Bozeman* rejected the "reasonable value of services" approach which awarded the plaintiff the entire amount of medical expenses that were billed to the plaintiff, including the written-off amounts.

The *Bozeman* court also rejected the "actual amounts paid" approach which denies the plaintiff the ability to recover the written-off amounts based upon the reasoning that the plaintiff did not incur the written-off amount and an award of that amount would result in a windfall to the plaintiff. The court agreed instead with the reasoning that, if there is to be a windfall, it should enure to the benefit of the injured party and not to the tortfeasor. The court agreed with and cited *Griffin v. The Louisiana Sheriff's Auto Risk Assoc.*, 99-2944, p. 37 (La.App. 1 Cir. 6/22/01), 802 So.2d 691, 715, *writ denied*, 01-2117 (La. 11/9/01), 801 So.2d 376, which stated that the proper focus of the inquiry is "on the nature of the write-offs vis-a-vis the tortfeasor, rather than vis-a-vis the tort victim." The *Griffin* court reasoned that the existence or non-existence of an underlying obligation cannot form the basis for applying the collateral source rule to write-offs because the result is a diminution of

14

the tortfeasor's liability vis-a-vis an insured victim when compared with the same tortfeasor's liability vis-a-vis an uninsured victim.

After quoting the *Griffin* court for the above reasoning, the *Bozeman* court opted to embrace a third approach called the "benefit of the bargain," which awards the plaintiff the full value of his medical expenses, including the write-off amount, where the plaintiff has paid some consideration for the benefit of the written-off amount. The *Bozeman* court distinguished Medicaid, a social service health care provider for persons with low income and limited assets, from Medicare, which is healthcare *insurance* funded by beneficiaries and their employers. The *Bozeman* court articulated that while care of the nation's poor is an admirable social policy, "where the plaintiff pays no enrollment fee, has no wages deducted, and otherwise provides no consideration for the collateral source benefits he receives, we hold that the plaintiff is unable to recover the 'write-off' amount." *Bozeman*, 879 So.2d at 705.

The court then concluded,

> Medicaid recipients are unable to collect the Medicaid "write-off" amounts as damages because no consideration is provided for the benefit. Thus, plaintiff's recovery is limited to what was paid by Medicaid. However, in those instances, where plaintiff's patrimony has been diminished in some way in order to obtain the collateral source benefits, then plaintiff is entitled to the benefit of the bargain, and may recover the full value of his medical services, including the "write-off" amount.

*Id*. at 705-06.

It is clear that the *Bozeman* holding was narrowly tailored to the facts in that case regarding the recovery of written-off medical bills pursuant to Medicaid payments, and it is equally clear that *Bozeman* cannot be expanded to deny the Duplechains legal interest on their damages. The Duplechains are not seeking a recovery of written-off amounts above what Medicaid has paid. In fact, the *Bozeman*

15

court's conclusion that the plaintiff's recovery was limited *to what Medicaid paid*, supports our determination that Medicaid payments for medical care are special damages recoverable by the plaintiff. Therefore, interest accrues on those damages as well.

Further, while the *Bozeman* court did not discuss the mandatory reimbursement to Medicaid, it indicated that DHH had failed to intervene and was denied its motion to withdraw funds from the registry of the court. In the present case, Medicaid was reimbursed *because* the Duplechains hired a lawyer, filed suit, and obtained the Medicaid recovery for DHH/Medicaid. Hence, the Duplechain's patrimony was diminished, and consideration was paid for the recovery of health care costs.

As we previously stated, *Bozeman* had nothing to do with legal interest, which is not a damage subject to being written off. In this case, Medicaid paid $96,070.32 to medical providers on the Duplechains' behalf. Medicaid was reimbursed through the litigation efforts of the Duplechains, as their attorney recouped that amount from the liability insurer, PCF. Counsel for the Duplechains negotiated a lien reduction with Medicaid for $86,463.29. Due to the Medicaid privilege for the $96,070.32 that Medicaid paid to medical providers, the PCF paid the full amount of the lien with knowledge of the reduction to the Duplechains, and PCF raises no issue in that regard. Counsel for the Duplechains estimates his expenses for the five years of litigation at over $120,000.00, which is a cost that the Duplechains will bear.

Accordingly, there was more than ample consideration paid for the small lien reduction of $9,607.03. The Medicaid statutes clearly recognize the recovery efforts of the attorney. In fact, the Medicaid scheme at La.R.S. 46:446(F) specifically

provides that the attorney's lien is ranked above that of Medicaid: "The privilege of an attorney shall have precedence over the privilege created under this Section." In any event, the lien reduction was between the Duplechains and DHH/Medicaid and had nothing to do with the medical provider's original bill, write-offs, or any amounts above what was paid by Medicaid.

*Bozeman* is not applicable here because the plaintiffs are not trying to recover the amounts that the medical provider wrote off of its original bill when it accepted $96,070.32 in payment from Medicaid. We have not been made aware of the amount of that write-off because it is not at issue. The plaintiffs are merely trying to recover statutorily-mandated legal interest on their damages, part of which were paid by Medicaid, and which were fully recovered and reimbursed through the efforts and expenses of their attorney, and therefore the plaintiffs themselves.

Medicaid-paid medical expenses are special damages clearly recoverable by the tort victim. The legal interest on those damages is a mandatory compensation to which the plaintiffs are also entitled. We have found no exception for avoiding legal interest because part of the damages were paid by Medicaid, and we know of no other public policy at issue. The Medical Malpractice statute makes it clear that the PCF is not publicly-funded. Louisiana Revised Statutes 40:1299.44, entitled "Patient's Compensation Fund," states in pertinent part:

> The state recognizes and acknowledges that the fund and any income from it are not public monies, but rather are private monies which shall be held in trust as a custodial fund by the state for the use, benefit, and protection of medical malpractice claimants and the fund's private health care provider members . . . .

Legal interest is payable on tort damages under La.R.S. 13:4203, under La.Code Civ.P. art. 1921, and under the Medical Malpractice Act at La.R.S. 40:1299.47(M). Neither the statutes nor the jurisprudence interpreting them provide

17

an exception for the portion of the plaintiff's damages paid by and reimbursed to Medicaid.

IV.

**CONCLUSION**

Accordingly, based upon the foregoing, the trial court's denial of the plaintiffs' motion for summary judgment is reversed. Legal interest is due and owing from the Patient's Compensation Fund on the Medicaid-paid portion of the medical damages of $96,070.32. The date of judicial demand in this case is the date that the complaint was filed with the PCF, pursuant to La.R.S. 40:1299.47(M). Costs of this appeal are assessed to the Patient's Compensation Fund.

**REVERSED AND RENDERED.**

NUMBER 10-736

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

KENNETH DUPLECHAIN, ET AL.

VERSUS

FIROOZ JALILI, ET AL.

AMY, J., concurs in the result and assigns separate reasons.

Louisiana Revised Statutes 46:446(A) provided the Department of Health and Hospitals with a cause of action for the damages at issue. A judgment reflecting the costs for those damages would have properly included interest under the statutory authority cited by the majority.

However, and also pursuant to La.R.S. 46:446(A), the DHH intervened in the plaintiffs' case rather than filing suit in its own right. Further, the DHH's outstanding cause of action for the damages at issue was subsequently extinguished by the satisfaction of the lien by the plaintiffs. Whether the negotiations between the DHH and the plaintiffs included consideration for the interest on the damages became a contractual matter between the DHH and the plaintiffs. With the satisfaction of the DHH lien, the right to pursue interest remained with the party who retained the cause of action against the Louisiana Patients' Compensation Fund. In this case, the plaintiffs retained that cause of action. Accordingly, under the facts of this case, the plaintiffs would have been able to recover the interest on the damages at issue, i.e., those previously paid by DHH and now repaid by the plaintiffs.

For these reasons, I respectfully concur in the result.